NUMBER
13-03-727-CV

 

                                      COURT OF APPEALS

 

                            THIRTEENTH DISTRICT OF TEXAS

 

                              CORPUS CHRISTI - EDINBURG

___________________________________________________________________

 

PASTOR RICK BARR AND

PHILEMON HOMES, INC.,                                                                    Appellants,

 

                                                             v.

 

THE
CITY OF SINTON,                                                                              Appellee.

___________________________________________________________________

 

                               On appeal from the
343rd District Court

                                       of San Patricio
County, Texas.

___________________________________________________  _______________

 

                                MEMORANDUM OPINION[1]

 

                        Before
Chief Justice Valdez and Justices Hinojosa and Rodriguez 

                                        Memorandum
Opinion by Chief Justice Valdez 

 








In this
declaratory action, appellants, Pastor Rick Barr and Philemon Homes, Inc.
(Pastor Barr), sought a determination of whether an ordinance adopted by
appellee, the City of Sinton (City), was constitutional and whether it violated
the Texas Religious Freedom Act.  See
Tex. Const. art. I , '' 3, 3a, 6, 8,
& 27;[2]
Tex. Civ. Prac. & Rem. Code Ann. ''
110.001-.012 (Vernon 2005).  The trial
court denied Pastor Barr's requested relief. 
By twelve issues, Pastor Barr contends that the trial court erred (1) in
failing to enter appropriate findings of fact and conclusions of law, (2) in
failing to hold that the ordinance was unconstitutional and/or violated the
Religious Freedom Act, (3) in finding chapter 244 prohibited Pastor Barr's use
of the homes, (4) in finding no compensable damages because the parties agreed
to bifurcate the trial as to liability and damages, (5) in finding chapter 509
of the Texas Government Code prohibited Pastor Barr's use of the homes, and (6)
in finding the evidence legally or factually sufficient to establish certain
findings or conclusions.  We affirm.

I.  Background

 Pastor Richard Barr owns two homes that are
operated by his corporation, Philemon Homes, Inc.  These homes are operated to provide housing
for parolees and probationers.  They are
located across the street from Pastor Barr's sponsoring church and within the
boundaries of the City.

On April 26,
1999, the City enacted Ordinance No. 1999-02 which added section 154.026 to the
City's municipal code.  This ordinance
prohibits the act of locating a correctional or rehabilitation facility within
1,000 feet of certain land areas. 
Ordinance 1999-02 is the basis of this appeal.








II.  Appropriate Findings of Fact and Conclusions
of Law













By his first
issue, Pastor Barr contends that the trial court erred in failing to enter
appropriate findings of fact and conclusions of law.  After the trial court entered its findings
and conclusions,[3]
Pastor Barr requested additional findings of fact and conclusions of law.[4]  Now on appeal, Pastor Barr complains that,
given the circumstances of this particular case, he can only guess at the
reasons for the trial court's decision. 
We disagree.








In this
declaratory action, Pastor Barr challenges the constitutionality of the City
ordinance.  The trial court made findings
of fact and conclusions of law in support of the constitutionality of the
ordinance.  Additionally, the trial court
made findings of fact and conclusions of law regarding Pastor Barr's claim that
the ordinance violated the Religious Freedom Act.  "Findings of facts are the decisions of
the judge and reflect the ultimate and controlling factual issues of a
plaintiff's claim or a defendant's defense. 
From the findings of fact the trial court judge draws his conclusions of
law which support his disposition of the case at bar."  James Holmes Enter., Inc. v. John Bankston
Constr. & Equip. Rental, Inc., 664 S.W.2d 832, 834 (Tex. App.BBeaumont 1983, writ ref'd n.r.e.) (op. on reh'g); see
ASAI v. Vanco Insulation Abatement, Inc., 932 S.W.2d 118, 122 (Tex. App.BEl Paso 1996, no writ) (holding that a trial court
is only required to make findings of fact and conclusions of law that are
appropriate).  In this case, the findings
of fact and conclusions of law filed by the trial court addressed the controlling
issues that are dispositive of this case.

A request for
additional findings and conclusions is appropriate when the additional
requested findings relate to an ultimate or controlling issue.  Tex.
R. Civ. P. 298; Dura-Stilts Co. v. Zachry, 697 S.W.2d 658, 661
(Tex. App.BHouston [1st Dist.] 1985, writ ref'd n.r.e.); see
Nat'l Commerce Bank v. Stiehl, 866 S.W.2d 706, 707 (Tex. App.BHouston [1st Dist.] 1993, no writ).  However, a trial court does not commit error where
it ignores requests for findings that are evidentiary; requests that ask
"how" the court arrived at its findings or ask for explanations of
the court's ruling in the case.  Dura-Stilts,
697 S.W.2d at 661.  In this case, the
requested findings and conclusions (1) inquire into detailed legal or factual
issues that were not ultimate issues, (2) are evidentiary in that they ask how
the court arrived at its findings, or (3) have been answered by the trial
court's findings of fact and conclusions of law.  Thus, the trial court did not err in refusing
to file additional findings and conclusions.








Furthermore, even
were we to conclude error, it was not harmful. 
See Tex. R. App. P. 44.1(a)(2).  "Where refusal does not prevent the
adequate presentation of the matter being complained of on appeal, no
reversible error has occurred."  Tamez
v. Tamez, 822 S.W.2d 688, 693 (Tex. App.BCorpus
Christi 1991, writ denied); see ASAI, 932 S.W.2d at 122.  Pastor Barr was not prevented from adequately
presenting his complaints on appeal due to the trial court's refusal to make
such additional findings.  We find Pastor
Barr suffered no injury due to the trial court's refusing his request for
additional findings and conclusions.  See
Tamez, 822 S.W.2d at 693 (providing that if the record shows the
complaining party did not suffer injury, the failure to make such additional
findings does not require reversal).

We overrule
Pastor Barr's first issue.

III.  Constitutional Rights and the Religious
Freedom Act

By his second
issue, Pastor Barr generally contends the trial court erred in failing to hold
that the City ordinance is unconstitutional and/or violates the Religious
Freedom Act.

City ordinance
number 1999-02, an ordinance adding section 156.026 to the City's code to zone
for certain correctional and rehabilitation facilities, provides the following,
in relevant part:  "A correctional
or rehabilitation facility may not be located in the City of Sinton within 1000
feet of a residential area, a primary or secondary school, property designated
as a public park or public recreation area by any governmental authority, or a
church, synagogue, or other place of worship."  The ordinance defines "correctional or
rehabilitation facility" as follows:

a residential
facility that is not operated by the federal government, the state of Texas,
[or] San Patricio County, and that is operated for the purpose of housing
persons who have been convicted of misdemeanors or felonies or children found
to have engaged in delinquent conduct, regardless of where the persons are
housed (i) while serving a sentence of confinement following conviction of an
offense; (ii) as a condition of probation, parole, or mandatory supervision; or
(iii) within one (1) year after having been released from confinement in any
penal institution.

 








A.  Constitutional Rights

1.  Freedom of Religion

Pastor Barr first
asserts that the ordinance violated his freedom of worship.  See Tex.
Const. art. 1, ' 6.  However,
applying the federal constitution,[5]
the United States Supreme Court has concluded that an individual's religious
beliefs do not excuse him from compliance with an otherwise valid law
prohibiting conduct that the State is free to regulate.  Employment Div., Dep't of Human Res. v. Smith,
494 U.S. 872, 878-79 (1990) (superceded by statute on other grounds as stated
in Cutter v. Wilkinson, 125 S. Ct. 2113, 2118 (2005)); see Pharr v.
Tippitt, 616 S.W.2d 173, 175 (Tex. 1981)








(setting out that "[z]oning
is an exercise of a municipality's legislative power").  Religious beliefs do not excuse one's
compliance with "generally applicable" laws such as a state's drug
laws, see id. at 890, or a city's zoning regulations.  See City of Boerne v. Flores, 521 U.S.
507, 535 (1997).  Because the City's
zoning ordinance is a valid law prohibiting conduct that it is free to
regulate, see id.; Smith, 494 U.S. at 878-79, and because it is
generally applicable to any person desiring to operate correctional or
rehabilitation facilities, cf. Islamic Ctr. v. City of Starkville, 840
F.2d 293, 294 (5th Cir. 1988) (holding zoning law unconstitutional "as
applied" because a municipality's officials had acted with blatant
discrimination in denying a variance to an Islamic group while granting a
variance to every Christian group that had ever requested one), we conclude
Pastor Barr's freedom of religion claims lack merit.

2.  Freedom of Speech








Pastor Barr also
contends that the ordinance not only impacts his freedom of worship but also
his freedom of speech.  See Tex. Const. art. I , ' 8.  He asserts that it is his underlying act of
conveying a Christian message in the homesBhis purpose or motivation for the homes' existenceBthat, in this case, prohibits the housing of persons
who have been convicted of misdemeanors or felonies within one year of being
released from any penal institution. 
Pastor Barr urges that the ordinance punishes the Christian thought or
message behind the act, not the act of housing itself, and that it is what is
spoken inside the homes that puts him in violation of the ordinance.  He contends, therefore, that the ordinance is
content based, not content neutral, and should have been reviewed under a
strict scrutiny standard.[6]  See Tex. Dep't of Transp. v. Barber,
111 S.W.3d 86, 92-98 (Tex. 2003), cert. denied, 540 U.S. 1177 (2004).








Assuming without
determining whether the state constitution's freedom of speech clause is
applicable in this case, the issue before us then is whether the ordinance is
content neutral or content based.  In
making the determination of what is content neutral, the standard is
"whether the government has adopted a regulation of speech because of
disagreement with the message it conveys. . . . 
The government's purpose is the controlling consideration."  Barber, 111 S.W.3d at 94 (quoting Ward
v. Rock Against Racism, 491 U.S. 781, 791 (1989)).  In this case, we find nothing in the record
that would establish that the City adopted the ordinance to regulate speech
because it disagreed with the Christian message Pastor Barr was conveying or
with his motivation to clothe, house, and feed the needy.  The purpose of the legislation was not to
stifle speech but rather to protect the public by regulating the location of
correctional and rehabilitation facilities.[7]  Cf. City of Renton v. Playtime Theatres,
Inc., 475 U.S. 41, 44 (1986) (holding that an ordinance could be treated as
content neutral because its purpose was aimed not at the content of the speech,
but rather at the secondary effects of the business on the surrounding
community).  It is this purpose that
controls.  See Barber, 111 S.W.3d
at 86, 94.  Furthermore, First Amendment
cases recognize that statutes may also be content neutral because they are  justified without reference to the content of
the regulated speech.  See id. at
100 (citing City of Renton, 475 U.S. at 48).  The ordinance in this case does not reference
the content of the regulated speech, if any. 
We conclude the ordinance is not content based as Pastor Barr contends.[8]  Thus, his assertion that the trial court should
have applied the strict scrutiny standard fails as to the freedom of speech
claim.

3.  Right of Assembly








Pastor Barr also
contends the ordinance prohibits people who have been incarcerated from living
together or assembling in homes governed by Christian principles because that
is the purpose of the homes' existence.  See
Tex. Const. art. 1, ' 27.  However,
the constitutional rights of assembly and association do not extend a right for
unrelated persons to live together in violation of a municipal zoning
ordinance.  See Village of Belle Terre
v. Boraas, 416 U.S. 1, 7-8 (1974) (upholding ordinance imposing limits on
type of groups that could occupy single-family dwelling).  Thus, this claim also lacks merit.

4.  Equal Rights and Equality under the Law

Finally, Pastor
Barr complains that the ordinance violates section 3 and section 3a of the
constitution because he was treated unequally as compared to someone who
intends to house the same people but for a different purpose, i.e., profit vs.
ministry.  See Tex. Const. art. 1, '' 3, 3a. 
However, there is nothing in the record showing that a similarly
situated class has been treated differently in this case.  Furthermore, we cannot conclude that the
ordinance affects one class differently from any other class that is attempting
to house groups of previously incarcerated persons.  Cf. Palmer v. Thompson, 403 U.S. 217,
225 (1971) (concluding that there is no violation of equal protection when the
state action affected blacks no differently than whites).  Thus, this argument fails.

B.  The Texas Religious Freedom Act[9]








Section
110.003(a) of the Religious Freedom Act prohibits a government agency from
substantially burdening a person's free exercise of religion.  Tex.
Civ. Prac. & Rem. Code Ann. ' 110.003(a) (Vernon 2005).  Subsection (a) does not apply, however, if
the government agency can demonstrate that the application of burden is in
furtherance of a compelling governmental interest and is the least restrictive
means of furthering that interest.  Id.
' 110.003(b). 
The Religions Freedom Act defines "free exercise of religion"
as "an act or refusal to act that is substantially motivated by sincere
religious belief."  Id. ' 110.001(a)(1). 









Pastor Barr
testified that Philemon Restoration Homes, Inc., "is a ministry that
reaches out to men [who] are being released from prison or men who also are on
the street" meaning men "who are not incarcerated."  The ministry provides "for religious
instruction and counsel and to help." 
Pastor Barr further testified that he owned two residency homes that are
operated by the corporation.  Assuming
without determining that Pastor Barr's ministry is substantially motivated by
sincere religious belief, we nonetheless conclude that while the ordinance
precludes Pastor Barr from operating a correctional or rehabilitation facility
within 1000 feet of residential areas, schools, parks, recreation areas, and
places of worship, which may include most of the City,[10]
there is nothing in the ordinance that precludes him from providing his
religious ministry to parolees and probationers, from providing instruction,
counsel, and helpful assistance in other facilities in Sinton, or from housing
these persons outside the City and providing his religious ministry to them
there.








Moreover, Texas
courts have long applied zoning ordinances to church-operated schools and
colleges, supporting the conclusion that zoning ordinances do not substantially
burden such auxiliary religious operations. 
In Fountain Gate Ministries, Inc., v. City of Plano, 654 S.W.2d
841, 844 (Tex. App.BDallas 1983, writ ref'd n.r.e.), the court held that
the operation of a college by a church did not implicate federal First
Amendment Concerns.  Id.  Therefore, a municipal zoning ordinance that
precluded use of land for a college was upheld over a church's objection.  Id. 
Likewise, in Heard v. City of Dallas, 456 S.W.2d 440, 444 (Tex.
App.BDallas 1970, writ ref'd n.r.e.), the court held that
a city ordinance applied to a day nursery or kindergarten operated in a church
vicar's house even though religious training and worship were also
provided.  Id.; cf. Christian
Academy v. City of Abilene, 62 S.W.3d 217, 219 (Tex. App.BEastland 2001, no pet.) (citing pre-1990 cases
holding that municipal building codes applied to church-operated schools).

We
conclude Pastor Barr's religious rights were not substantially burdened by the
City ordinance.  Therefore, the Religious
Freedom Act has not been violated.            Accordingly, we overrule Pastor Barr's
second issue.

IV.  Remaining Issues

In issues five,
six, and seven, Pastor Barr complains of the sufficiency of the evidence to
establish the following:  (1) that the
ordinance did not substantially burden Pastor Barr's free exercise of religion,
freedom of assembly and association, or freedom of speech rights; (2) that the
ordinance was in furtherance of a compelling governmental interest and is the
least restrictive means of furthering that interest; and (3) that the ordinance
was rationally related to a legitimate state purpose.  However, in accordance with rule 38.1(h) of
the Texas Rules of Appellate Procedure, we will only consider contentions that
are supported by clear and concise arguments with appropriate citations to
authorities. Tex. R. App. P.
38.1(h).  Because these issues are not
adequately briefed, we overrule Pastor Barr's fifth, sixth, and seventh
issues.  See id.

Finally, we need
not address Pastor Barr's remaining issues because they are not dispositive to
this appeal. See Tex. R. App. P.
47.1.








V.  Conclusion

Based on the
facts and issues before us in this appeal, we affirm the judgment of the trial
court.                                                    

 

____________________________

ROGELIO VALDEZ

Chief Justice

 

Memorandum Opinion delivered and 

filed this 23rd day of November, 2005.                            











[1]As this is a memorandum opinion and
because all issues of law presented by this case are well settled and the
parties are familiar with the facts, we will not recite the law and the facts
in this opinion except as necessary to advise the parties of the Court=s decision and the basic reasons
for it.  See Tex. R. App. P. 47.4.





[2]Section 3 of the Texas Constitution
provides equal rights, section 3a equality under the law, section 6 freedom of
worship, section 8 freedom of speech and press, and section 27 freedom to
assemble.  See Tex. Const. art. I , '' 3, 3a, 6, 8, & 27.





[3]The trial court made the following
findings of fact and conclusions of law:

 

1. 
The City . . . Ordinance 199-02, adding Section 156.026 to the City Code
to zone for correctional and rehabilitation facilities (hereinafter "the
Ordinance"), was violated by [Pastor Barr's] facilities.

 

2. [Pastor Barr] operated a
correctional or rehabilitation facility under contract with a state agency or a
political subdivision of the state and housed persons convicted of misdemeanors
or felonies or children found to have been engaged in delinquent conduct.

 

3. 
Local consent was not given for [Pastor Barr] to operate such facility
within 1000 feet of a residential area, a primary or secondary school, property
designated as a public park or public recreation area by the state or a
political subdivision of the state or a church, synagogue, or other place of
worship.

 

4. 
Pastor Barr operated such facility within 1000 feet of a residential
area, a primary or secondary school, property designated as a public park or
public recreation area by the state or a political subdivision of the state or
a church, synagogue, or other place of worship.

 

5. [Pastor Barr's] facility was in
violation of Texas Local Government Code Annotated, Section 244.003.

 

6. 
Because [Pastor Barr's] facility was in violation of the Texas Local Government
Code, state law precludes [Pastor Barr] from operating the facility regardless
of the city's zoning ordinance.

 

7. 
The ordinance did not substantially burden [Pastor Barr's] free exercise
of religion, freedom of assembly and association, or freedom of speech rights.

 

8. 
The ordinance was in furtherance of a compelling governmental interest
and is the least restrictive means of furthering that interest.

 

9. 
The ordinance was rationally related to a legitimate state purpose.

 

10. No amount of compensable
damages was suffered by [Pastor Barr] as a result of [the City's] conduct.

 

11. The ordinance did not violate
the Religious Freedom Act, Texas Civil Practice & Remedies Code, Chapter
110, nor the Texas Constitution, Article I, Sections 3, 3a, 6, 8, 19, and 27.

 

12. [Pastor Barr's] facility did
not provide levels of security appropriate for the population served by the
facility, including as a minimum a monitored and structured environment in
which the residents' interior and exterior movements and activities can be
supervised by specific destination and time.

 

13. [Pastor Barr's] facility did
not meet the minimum standards for community correction facilities under Texas
Government Code, Section 509.006(c).

 

14. Because [Pastor Barr's]
facility did not meet the minimum standards for community correction
facilities, state law precludes [Pastor Barr] from operating a facility
regardless of any city ordinance.

 

15. There was no wrongful act
committed by the [City].

 

16. There was no imminent harm
suffered or to be suffered by [Pastor Barr].

 

17. [Pastor Barr has] not suffered
and will not suffer any irreparable injuries.

 

18. [Pastor Barr] failed to give notice as required by the Religious
Freedom Act.





[4]Challenging the trial court's
findings of fact and conclusions of law generally, Pastor Barr contends that
the trial court erred when it did not file additional findings and conclusions
in response to the following requests:

 

2. 
Does the [c]ourt find that [Pastor Barr's] use of the home is pursuant
to a contract with the State of Texas or any of its subdivisions?  If so, what specific elements of Defendant's
claim of contract does the [c]ourt find?

 

5. 
Does the [c]ourt find that the ordinance in question is in furtherance
of a compelling governmental interest? 
If so, what is the specific interest?

 

7. 
If the [c]ourt's decision is based on limitations, what date does the
[c]ourt find that [Pastor Barr] knew or should have known of the substantial
burden on [Pastor Barr's] free exercise of religion?

 

8. 
Did the . . . City arbitrarily and unreasonably use its power?

 

9. 
Does the [c]ourt find that [Pastor Barr's] use of the home constitutes a
nuisance?  If so, in what way?

 

10. Did the [c]ourt review the
ordinance as "content based"?

 

11. Did the [c]ourt review the
ordinance by a "strict scrutiny" standard?

 

12. Does the [c]ourt find that the
ordinance is narrowly drawn to serve a compelling state interest that
reasonably regulates the time, place, and manner of permitted speech?  If so, what is the compelling state's
interest?

 

13. Does the [c]ourt find that the
ordinance leaves open ample channels for [Pastor Barr's] use of the home as a
place for people who have been incarcerated to live together (assemble) in
homes governed by Christian principles because that is the purpose of the
homes' existence?  If so, what other
channels does the [c]ourt find are available to [Pastor Barr] so they can
assemble for this purpose?

 

14. Does the [c]ourt find that
[Pastor Barr's] use of the home is a ministry or a profit making venture?

 

15. Does the [c]ourt find that as
long as it is not the intent of a property owner to house a person who comes
under the ordinance's scope the ordinance is not violated?

 

16. Does the [c]ourt find that
[Pastor Barr's] use of the home is substantially motivated by a sincere
religious belief?

 

17. Does the [c]ourt find that the
ordinance regulating where a Class C misdemeanant lives is a compelling
governmental interest?

 

18. Does the [c]ourt find that
there is a U.S. Government law that regulates where a Class C misdemeanant
lives that constitutes a compelling governmental interest?  If so, state the substance of this law.

 

19. Does the [c]ourt find that [the
City] enacted this ordinance to specifically target [Pastor Barr's] operation
of the homes?

 

20. Does the [c]ourt find that the ordinance restricts [Pastor Barr's]
free speech that occurs in the homes?





[5]The Texas and federal
constitutional provisions regarding the exercise of religion are treated as
coextensive unless a party argues that different treatment is required by such
factors as the state provision's text, history, and purpose.  See Tilton v. Marshall, 925 S.W.2d
672, 677 n.6 (Tex. 1996); see also Fort Worth Osteopathic Hosp., Inc. v.
Reese, 148 S.W.3d 94, 98 (Tex. 2004) (setting out similar analysis applied
to equal protection clause); Tex. Dep't of Transp. v. Barber, 111 S.W.3d
86, 106 (Tex. 2003), cert. denied, 540 U.S. 1177 (2004) (setting out
similar analysis applied to free speech clause).  Pastor Barr has made no such argument.





[6]Pastor Barr also generally contends
that the ordinance makes the housing illegal only if the purpose of the
property owner is to house persons who have been released from
incarceration.  He asserts the ordinance
makes the motivation of the housing illegalBnot the actual act of housing itself.  Pastor Barr contends, for example, that if
one owns an apartment building that houses 100 child molesters, rapists, and
gangsters, it would not be illegal; however, if it is one's purpose to house
only one person who has been convicted of passing a hot check for $20.00, a
class C misdemeanor, then he would be breaking the law.  He argues that the ordinance punishes the
thought behind the actBnot the act itself; if the
motivation is to clothe, house, and feed the needy, regardless of any rational
connection to the public's health or safety, then the motivation underlying the
act makes the act illegal and the law is content based.  He complains that the ordinance is not a
rational restriction on the use of privately owned real property, but an
arbitrary use of zoning power that is unreasonable and, thus, unconstitutional.  

 

We construe these contentions
as challenges to the ordinance's alleged restriction of expressive conduct and
will consider them as they may relate to freedom of speech.  To the extent this language could be
construed as a due course of law or substantive due process claim, it has not
been adequately briefed and therefore is waived.  See Tex.
R. App. P. 38.1(h) (providing contentions on appeal must be supported by
clear and concise arguments with appropriate citations to authorities and to
the record).  





[7]Dana J. Hendrick, the Director of
the Community Supervision and Corrections Department for the judicial district,
including Aransas, Bee, Live Oak, McMullen, and San Patricio Counties, testified
as follows:

 

The CCSDs [sic] in general to the
Texas Department of Criminal Justice do not place offenders in facilities that
are not complying with statutes that apply to community corrections
facilities.  So it applies to Health and
Safety Code issues, Fire Code issues, location and siting.  Because obviously if we don't follow the law,
we would end up congregating offenders in areas of the community that don't
meet the statutory provisions that we must observe and would create obviously a
problem with the community. . . .  Under
our guidelines we wouldBcertainly for security and
protection of the public we need to know that there is 24-hour supervision as
well as accountability for those offenders because any time you congregate
numbers of offenders, the odds of problems occurring go up.  And there's actually a staff ratio that we
follow basically which is one staff member for every forty-eight residents 24
hours a day.

 

Hendrick further testified that he,

 

had some concerns about the siting
of the facility, compliance with the statute, the fact that [Barr] might be
circumventing the statutory restrictions on a community corrections
facility.  And our department would not
do that because we are responsible for supervising offenders on the same
guidelines across the board statewide. 
So because of what he was proposing we felt it was improper to site a
facility and circumvent the intent of the legislature to locate facilities with
consent of the community through public hearings and distances appropriate
based on law.





[8]As authority supporting his
argument on this issue, Pastor Barr relies on Barber v. Tex. Dep't of
Transp., 49 S.W.3d 12 (Tex. App.BAustin 2001), rev'd, 111 S.W.3d 86 (Tex. 2003).  However, the supreme court reversed the
Austin Court, concluding that the statute in question was content neutral, and
therefore a lesser level of scrutiny should be utilized in reviewing the
statute.  Barber, 111 S.W.3d at
89, 103.  Pastor Barr also cites City
of Corpus Christi v. Allen, 254 S.W.2d 759 (Tex. 1953), as authority for
his contention.  The court in Allen
concluded that there had been a taking as a consequence of the zoning
change.  Id. at 141-42.  Pastor Barr did not plead "a
taking."  Therefore, Allen
does not support Pastor Barr's position. 
Finally, Pastor Barr quotes, as authority, language from both the
majority and the dissent in Ex Parte Tucci, 859 S.W.2d 1, 5, 62 (Tex.
1993).  Ex Parte Tucci, however,
involved the violation of a temporary restraining order that barred persons
from protesting in certain areas around abortion clinics so that access to the
clinic could be maintained.  Id.
at 3.  The supreme court in Ex Parte
Tucci addressed the issue of whether the injunctive relief granted was the
least restrictive means of preventing the alleged harm.  Id. at 6.  The present case does not involve the
violation of a restraining order or an injunction.





[9]The Religious Freedom Act was
enacted by the Texas legislature to provide the rights and protections that the
federal statute would have afforded had it not been ruled unconstitutional in City
of Boerne v. Flores, 521 U.S. 507, 512 (1997), as applied to the
states.  See Senate Res. Ctr., Bill
AnalysisBS.B. 138 (Enrolled Ver.) (July 7,
1999).  Congress had enacted the
Religious Freedom Restoration Act (RFRA) to avoid the effect of the Supreme
Court's ruling in Employment Div., Dep't of Human Res. v. Smith, 494
U.S. 872, 890 (1990) (holding that neutral, generally applicable laws may be
applied to religious practices even when not supported by a compelling
governmental interest) (superceded by statute as stated in Cutter v.
Wilkinson, 125 S. Ct. 2113, 2118 (2005)).  City of Boerne, 521 U.S. at 512.  The goal of the federal statute was to return
religious freedom law to its perceived state prior to April 17, 1990, when Smith
was decided.  See id.; see also
Tex. Civ. Prac. & Rem. Ann. Code
' 110.010 (Vernon 2005) (providing
that a municipality has no less authority to adopt or apply laws and
regulations concerning zoning, land use, planning, traffic management, urban
nuisance, or historic preservation than the authority of the municipality that
existed under the law as interpreted by the federal courts before April 17,
1990).





[10]To support his argument, Pastor
Barr refers this Court to the following testimony provided by Jackie Knox,
Sinton's city manager:

 

Q:         Is
there any property within the city limits of Sinton that you are aware of that
would qualify not being 1000 feet from any church, school, part . . . or
residential area?

A:         I
have not checked it out, but it would probably be minimal locations.

 

Q: 
       In other words, probably
pretty close to nonexistent?

 

A:         Possibly.

 

Q: 
       So in reality what the City
of Sinton has done was exclude from its board all activities relating to either
a felon or misdemeanor having been released within one year, prohibiting that
individual from receiving any rehabilitation?

 

. . . 

 

Q:         .
. . Would [the ordinance] exclude every house in the City of Sinton to your
knowledge?

 

A:         To
my knowledge it was to prohibit groups that would prohibit B that would be in violation of the
law, the state law.

 

Q:         Groups
is what your understanding is; not individuals?

 

A:         Yes, sir.