**FOUNTAIN GATE MINISTRIES, INC., Appellant,**

v.

**The CITY OF PLANO, Appellee.**

No. 05-83-00123-CV.

Court of Appeals of Texas, Dallas.

July 11, 1983.

George Walter Bramblett, Jr., Dallas, for appellant.

Ernest E. Figari, Jr., A. Erin Dwyer, Dallas, for appellee.

Before STEPHENS, SPARLING and VANCE, JJ.

SPARLING, Justice.

This is an appeal from a permanent injunction. On motion by appellee, the City of Plano, the trial court enjoined appellant, Fountain Gate Ministries, Inc., from specific activities which were allegedly in violation of the Plano zoning ordinance. In eleven points of error, Fountain Gate claims that the zoning ordinance is unconstitutionally vague and overbroad; that its enforcement infringes upon Fountain Gate's freedoms of religion and speech and violates the First Amendment establishment clause; that there was no evidence, or insufficient evidence, that the ordinance is related to a compelling state interest; that there is insufficient evidence to support the court's conclusion that Fountain Gate's prohibited activities are not a permitted use or church under the ordinance; and finally, that the injunction itself was imprecise and overbroad. We overrule all of appellant's points of error, and affirm.

### Zoning Ordinance: Exceptions and Prohibitions

In 1978 Fountain Gate purchased 21 acres located in the City of Plano, Texas. On that property Fountain Gate operated a church, an academy, and allegedly, a college. The property is zoned "SF–2" which is restricted to single family residences with several exceptions: notably, a "church and rectory" and a "school, public, or parochial." "Church and rectory" is defined by ordinance as:

A place of assembly and worship by a recognized religion including synagogues, temples, churches, instruction rooms, and the place of residence for ministers, priests, rabbis, teachers, and directors of the premises.

"School, public or parochial," is defined by ordinance as:

A school under the sponsorship of a public or religious agency having a curriculum generally equivalent to public elementary or secondary schools, but not including private or trade or commercial schools.

The SF–2 zoning ordinance specifically prohibits the land to be used for a boarding house, rooming house, child care center, and college or university. "College or University" is defined by ordinance as:

"an institution established for educational purposes and offering a curriculum similar to the public school, or an accredited college or university, but excluding trade and commercial schools."

When a property use is proscribed under the terms of the SF–2 zoning ordinance, the prohibition may be waived by the Plano city council if they approve a special use permit. Fountain Gate applied for a special use permit to operate a college or university, but the permit was denied by the city council. Fountain Gate then took the position that a special use permit was not necessary because the operation of a college was already permitted under the terms of the SF–2 zoning ordinance. More particularly, Fountain Gate avers that the "college" activities are so closely related to the "church" activities that the college falls within the "church & rectory" exception to the SF–2 zoning ordinance. Fountain Gate does not contend that a traditional college or university is improperly prohibited under the Plano SF–2 zoning ordinance.

### The Injunction

It is apparent that the trial court conceded that Fountain Gate is a "recognized religion" as that term is used in the "church or rectory" definition, because the court specifically refused to enjoin any activities that would fall within the "church," "rectory" or

"parochial school" category. Fountain Gate does not allege that the parochial school activities are substantially impaired.

By the terms of the injunction, Fountain Gate was specifically prohibited from using its premises for: (1) maintaining dormitories, (2) offering courses of study, (3) conferring a degree, (4) allowing overnight guests, (5) offering academic credit, (6) soliciting students to enroll, (7) using the cafeteria, (8) maintaining a faculty to teach courses, (9) maintaining a day care center or (10) maintaining any office activity. The prohibition of each of these activities was carefully phrased in the injunction so that it would not infringe upon the right of Fountain Gate to carry on activities that are permitted under SF–2 zoning. For example, all prohibited academics were limited to those over the 12th grade level, thus, prohibiting only that which was included in the "college or university" category, and leaving untouched the academy, which arguably is permitted by the "school, public or parochial" exception. Likewise, the lodging provision of the injunction specifically excluded ministers, directors and teachers from the prohibition, thereby taking it out of the "rectory" definition. The other provisions had similar language limiting their scope.

### Is the Injunction Imprecise and Overbroad?

■ Appellant claims in two points of error that the injunction is imprecise and overly broad because—before listing the ten specifically enjoined activities—it recites that the injunction: "includ[es] but [is] not limited to, the following:" Appellant conceded during argument that the "not limited to" language was the only offending language which would cause the terms of the injunction to be overbroad or imprecise.

However, the injunction further states: "all relief prayed for by any party but not herein *expressly* given is denied." (emphasis supplied). This phrase is controlling over the "... but not limited to" provision. We hold, therefore, that the injunction prohibits *only* those ten items expressly prohibited by its terms. Cf. *North East Independent School District v. Aldridge,* 400 S.W.2d 893, 898 (Tex.1966); *Vaquero Petroleum Co. v. Simmons,* 636 S.W.2d 762, 765 (Tex.App. —Corpus Christi 1982, no writ); *State v. J.H. Starley,* 413 S.W.2d 451, 458 n. 11 (Tex.Civ.App.—Corpus Christi 1967, no writ). Thus, the injunction comports with Tex.R.Civ.P. 683.[1] Accordingly, we hold that the injunction is neither imprecise nor overbroad, and overrule Fountain Gate's first two points of error.

### Is the Ordinance Constitutional?

In five points of error, Fountain Gate challenges the constitutionality of the zoning ordinance. It claims that it impairs the freedoms of religion and speech, that it is constitutionally overbroad and vague, and that it violates the establishment clause of the first amendment. Fountain Gate does not contend, however, that the operation of a college, *per se,* is an activity protected by the first amendment.

Fountain Gate argues that the ordinance[2] is facially overbroad and unconstitutional because it prohibits the exercise of rights guaranteed by the first amendment. Thus, Fountain Gate relies upon *Schad v. Mt. Ephraim,* 452 U.S. 61, 66, 101 S.Ct. 2176, 2181, 68 L.Ed.2d 671 (1981) in its argument that this court should consider how the detrimental impact of the ordinance would affect the expressive activities *on others* as well as its own activities in determining its constitutionality. We disagree because unlike the injunction in *Schad,* this injunction

1. Rule 683. states, in part:
   "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail and not by reference to the complaint or other document, the act or acts sought to be restained; ..."

2. The Plano Zoning ordinance is a long, comprehensive document. Throughout their brief appellant complains, generally, of "the ordinance" without specifically identifying to what portion of the Plano Zoning ordinance they are referring.

does not prohibit a first amendment freedom, but rather colleges and universities.

■ As previously noted, the injunction is couched in terms to carefully avoid prohibiting any activity falling within a "church or rectory" category. In "Findings of Fact and Conclusions of Law," the trial court made the following findings which we hold to be supported by the evidence.

\*　\*　\*　\*　\*　\*

C. *The College*

9. The College is an institution operated by Fountain Gate which offers an advanced two-year or four-year course of study for adults on a continuous basis throughout the year. Successful completion of the two or four year curriculum of the College results in the conferral of a degree by the College.

10. Enrollment in the College is open to any person regardless of his or her denomination, religious affiliation, or geographic location. Approximately seventy-five percent (75%) of all students who have been admitted to the College were not members of the Church at the time of enrollment.

11. Students wishing to enroll in the College must submit an application, pay an application fee, and provide evidence of high school completion or its equivalent.

12. Students attending the College are required to pay tuition for each hour of curriculum credit for which they enroll or register. In 1981–82, the tuition charged for a full-time student (i.e., twelve hours or more per trimester) was $300 per trimester.

13. The College employs a full-time faculty and staff to operate the College and administer to the non-academic needs of the students.

\*　\*　\*　\*　\*　\*

Thus, the trial court properly concluded that the above enumerated activities were that of a college, and not of a church. We

have found no case, and none is cited, that includes the existence or location of colleges within the purview of the first amendment. We hold that the operation of a college is not protected as an exercise of freedom of speech or freedom of religion within the first amendment.[3]

■ Because we determine that the only restrictions placed on Fountain Gate emanate from zoning against colleges—and related child care centers, rooming houses, or boarding houses—we find no issues of constitutional dimensions. We therefore overrule points of error three, four, five, eight and nine.

*Is The State Interest Served by the Ordinance?*

Fountain Gate next complains that there is no evidence, or alternatively, insufficient evidence, that the ordinance is related to a compelling state interest. We disagree. The City of Plano has had a comprehensive plan for development since 1963 which provides for the health, safety and general welfare of the public. The present zoning ordinance is the principal means of implementing that comprehensive plan.

■ Zoning ordinances are a valid exercise of the City's police powers. Tex.Rev. Civ.Stat.Ann. arts. 1011, 1011a (Vernon 1963); *Thompson v. City of Palestine,* 510 S.W.2d 579 (Tex.1974). "Comprehensive Zoning" permissibly establishes areas which group together various phases of community life. *Frost v. Village of Hilshire Village,* 403 S.W.2d 836 (Tex.Civ.App.—Houston 1966, writ ref'd n.r.e.). Further, the good of the community shall prevail when in conflict with private interests, *B.E.M. Homeowner's Ass'n v. City of Fort Worth,* 372 S.W.2d 364, 366 (Tex.Civ.App.—Fort Worth 1963, no writ).

■ As previously held, Fountain Gate's activities that are prohibited by the ordinance are not protected by the first amendment; therefore, Plano does not have the

---

**3.** We distinguish this from the freedom to choose teaching *content. Epperson v. Arkansas,* 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968); *Keyishian v. Board of Regents,* 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).

burden to justify the prohibition of activities as did the city in *Schad,* 452 U.S. at 72, 101 S.Ct. at 2184. Because, the adoption of a zoning ordinance by a city's governing body is an exercise of its legislative discretion, it is *presumed* to be valid. *Thompson v. City of Palestine,* 510 S.W.2d 579, 581 (Tex.1974) *citing City of University Park v. Benners,* 485 S.W.2d 773 (Tex.1972). Further, the party contesting the ordinance has an "extraordinary burden" to show that the ordinance is invalid. *Thompson* 510 S.W.2d at 581. In the absence of proof by Fountain Gate that the ordinance is *not* related to a compelling state interest, we presume it to be valid. We overrule points of error six and seven.

### Is the Evidence Insufficient?

■ In points of error ten and eleven, Fountain Gate contends that the evidence is insufficient to support the trial court's conclusion that the prohibited activities are not a church or rectory, or do not constitute an activity permitted by the ordinance. Again, we disagree. Fountain Gate fails to identify any finding of fact which is unsupported by evidence, and indeed, a perusal of the record reveals sufficient evidence to support all findings.

The findings, in turn, support the conclusions that the various prohibited activities are not a church or rectory. The dormitories house twenty five college students and are capable of accommodating up to sixty-five students. Further, friends or guests of Fountain Gate may, for a fee, reside in the dormitory. The full-time students are required to eat in the cafeteria, but anyone, whether affiliated with Fountain Gate or not, may eat there for the price of a meal. Finally, a day-care-center is maintained, primarily to care for the children of the college students.

Fountain Gate argues that because the prohibited activities are usually conducted in separate buildings, therefore the SF–2 Zoning ordinance permits their existence under the provision which would allow an "accessory building" which is customarily incidental to the main structure. We disagree. These activities are incidental to the structure containing the business of a college, not a church.

Our conclusion is supported by *Coe v. City of Dallas,* 266 S.W.2d 181 (Tex.Civ. App.—El Paso 1953, no writ), which held that a proposed building that was to devote 2,400 square feet to healing or prayer rooms, but only 600 square feet to a church proper was not a church and, therefore, was properly prohibited by a zoning ordinance *Coe* at 183. This issue was again addressed in *Heard v. City of Dallas,* 456 S.W.2d 440 (Tex.Civ.App.—Dallas 1970, writ ref'd n.r. e.), in which we held that a day nursery or a kindergarten was properly prohibited under the Dallas single family zoning ordinance, notwithstanding that its place of business was in the rectory of an Episcopal vicar. In rejecting the argument that this activity was a permitted use under the "church or rectory"[4] exception to the single family zoning, the court stated:

> We cannot uphold appellants' contention that they may lawfully conduct what to most minds would clearly be a day nursery or kindergarten and avoid the regulatory provisions of the ordinance by showing that in such nursery or kindergarten religious worship and training are conducted.

We hold that the trial court correctly concluded that the prohibited activities were not the activities of a church or rectory. Accordingly, we overrule points of error ten and eleven.

All points of error are overruled and the case is affirmed.

---

4. The definition of "church or rectory," in the Dallas Zoning ordinance is similar to the Plano ordinance.

 "(28) Church or Rectory: The place of worship and religious training of recognized religions including the on site housing of ministers, priests, rabbis, nuns and similar staff personnel."