NUMBER 13-99-645-CV 



COURT OF APPEALS 



THIRTEENTH DISTRICT OF TEXAS 



CORPUS CHRISTI 

___________________________________________________________________ 



TEXSON MANAGEMENT GROUP, INC., Appellant, 



v. 



THE CITY OF WESLACO, TEXAS, Appellee. 

___________________________________________________________________ 



On appeal from the 92nd District Court 

of Hidalgo County, Texas. 

___________________________________________________________________ 



O P I N I O N 



Before Chief Justice Seerden and Justice Hinojosa and Yañez


Opinion by Chief Justice Seerden 



This is an accelerated appeal from the trial court's entry of a temporary injunction.
Tex. Civ. Prac. & Rem. Code Ann. 51.014(4) (Vernon 1998). By three issues, Texson
Management Group, Inc., appellant, challenges several substantive bases upon which the
injunction was issued. Specifically, Texson contends that by granting the injunction, the
trial court: (1) abused its discretion because the injunction alters the status quo; (2)
incorrectly applied the law to undisputed facts by enforcing a void zoning action; and (3)
enforced a zoning action which violates its due process rights. We affirm the injunction. 

Facts 

On August 20, 1997, Texson Management Group, Inc. ("Texson"), filed an
application for a conditional use permit with the City of Weslaco ("City")
pursuant to Weslaco Municipal Ordinance number 76-4, as amended (the
"Ordinance"). On its application, Texson stated its purpose in seeking the
permit was to open and operate what it termed a "residential transitional treatment
center." This essentially means the facility would serve as a "Halfway
House." 

The Ordinance 

The Ordinance provides the City with a means of permitting certain businesses to
operate in parts of the City without regard to existing zoning ordinances. Certain uses
are strictly defined as conditional, including "Mental, Drug, or Alcohol Group
Therapy Centers." The ordinance provides the City Commission with the power to impose
restrictions upon the use for which the permit is sought. The ordinance sets out a
specific procedure by which a permit may be granted, but does not provide a specific
procedure by which a permit may be revoked or terminated. 



Approval of the Permit 

Pursuant to the Ordinance, several public hearings were held prior to granting Texson's
application. On September 17, 1997, after public notice had been given, the Planning and
Zoning Commission held its first hearing. The record reflects that John Bonner, President
and Chairman of the Board for Texson, testified that Texson operated "substance abuse
treatment facilities." He did not elaborate on the types of offenders the facility
would house. 

A second hearing was held before the City Commission on October 7, 1997. Bonner stated
that Texson's service was treating individuals with substance abuse problems. At the close
of all statements, a motion was made to grant the conditional use permit: 

for the purpose of establishing a facility to serve as a community residential and/or
residential outpatient facility for substance abuse treatment programs and house offenders
released on community supervision "parole" or mandatory supervision and referred
by the Community Supervision and Corrections Department and/or the Texas Department of
Criminal Justice. 



The motion carried unanimously and the permit was granted with the above stipulation of
purpose. On October 8, 1997, Juan Ortiz, Senior Planner in the Planning Department for the
City, sent a letter to Texson which stated: 

This is to advise you that the City Commission of Weslaco met at their regular meeting
Tuesday October 07, 1997 to consider your request for a conditional use permit . . .
within the limits of the City of Weslaco. 



The City Commission approved your request. 

There is no evidence in the record, however, that any other physical document
evidencing such a permit ever existed. 

The Controversy 

Texson's facility opened in December of 1997. By June of 1998, concerns arose over the
fact that several sex offenders were housed in the facility. On July 7, 1998, Bonner
appeared before the City Commission again to discuss this problem during a public hearing.


The minutes of the meeting reflect that Bonner provided a profile of the residents in
the facility. He stated the facility's capacity was one hundred residents. When asked if
the facility housed sex offenders, Bonner replied that, as of that date, four individuals
with sex offender backgrounds were present, but that those individuals were to be
transferred as soon as possible. Bonner further stated that until the facility received an
individual, management had no knowledge of the nature of the individual's offense. He
pointed out that most of the sex offenders were not sent to the facility on a sex offense
charge. 

On February 2, 1999, the City Commission held another public meeting on the matter. The
minutes of the meeting summarize Bonner's presentation as follows: 

He stated the facility was not a halfway house, but a transitional treatment center.
Mr. Bonner stated in their written presentation to the City Commission they had
specifically indicated that the facility was community residential that would provide
substance abuse programs. . . . Mr. Bonner indicated during their previous presentation
they had notified the City Commission that the state made the assignments of the residents
and they did not have any control of the type of residents that were sent to their
facility. He stated the issue was the sex offenders and only a few were at the facility. .
. . He assured the Commission that . . . they never had fifty (50) sex offenders at the
facility. Mr. Bonner stated they had provided services to over 600 residents since their
opening in December, 1997 and less than 10% had a background of some type of sexual
offense . . . . He pointed out that sex offenders were not allowed outside the facility
without staff's supervision. 



On February 12, 1999 a notice of a regular meeting of the Weslaco City Commission was
again posted. Among the items on the agenda for that meeting was "Reconsideration and
review of the conditional use permit for the Halfway House. . . . Possible action."
At the subsequent meeting, held on February 16,1999, Ramon Vela, Weslaco City Attorney,
stated that he had met with counsel for Texson and that it appeared the issue "would
be resolved." 

Another notice was posted prior to the March 2, 1999 meeting of the City Commission.
The agenda again noted that the conditional use permit for the "Halfway House"
would be reconsidered and reviewed with the possibility of some action. At this meeting,
the Commission decided to cease the operation of the Texson facility by August 31, 1999.
Vela stated that Texson management had confirmed that they would vacate the facility by
that date. However, the item was tabled before a vote on the motion was taken. 

On March 16, 1999, the City Commission again considered revoking the conditional use
permit. After a brief discussion, the Commission unanimously passed a motion revoking the
permit. 

The Temporary Injunction 

On September 13, 1999, the City filed its original petition for declaratory judgment
and for temporary and permanent injunctions. In addition to reciting the actions taken by
the City described above, the petition includes a statement that Texson had informed the
City on August 31, 1999, that it had been unable to find an alternative activity for its
property and thus, was not going to stop operations. The factual recitation concludes with
a statement that Texson continues to operate its facility without a viable conditional use
permit and with full knowledge that it no longer has such a permit. On the same day, the
trial court granted a temporary restraining order which restrained Texson from operation
of a "Community Residential Facility" for substance abuse treatment programs
within the City. The order set a hearing for September 23, 1999 on the temporary
injunction. 

On that morning, Texson filed a brief in opposition to the City's request for temporary
injunction and in support of its own request for temporary restraining order and/or
temporary injunction. Texson argued that the City failed to give adequate notice of its
intent to revoke the permit and that necessary procedures were not followed in revoking
the permit, thus making the City's action void. Moreover, Texson contended that it had not
received adequate notice of the meeting to revoke the permit and, as such, that it had
been denied due process in light of the fact that it had undertaken a multi-year lease on
the subject property with annual lease payments of $60,000, and had spent approximately
$567,000 to renovate an otherwise unuseable building. Texson also alleged that the relief
sought in the injunction, closure of the facility, subverted the status quo rather than
preserving it. 

The court took evidence from several witnesses. Juan Ortiz, the City Planning Director,
testified that, at the public hearings on October 7, 1997 and July 7, 1998, the issue of
housing sex offenders was a major concern. He stated that the motion to grant the permit,
made on October 7, 1997, did not include the authority for Texson to house sex offenders. 

The Mayor of Weslaco, Gene Braught, testified that it was his understanding, based on
Bonner's representations, that the permit was issued only to house substance abuse
treatment residents. Braught articulated that the permit was revoked on March 16, 1999
because Texson had not complied with the conditions that the City Commission had set
inasmuch as the facility housed sex offenders. 

Bob Davis, a realtor and owner of/or partner in properties on three sides of the Texson
facility, testified that women in his office were afraid to be alone after reports
surfaced that a former resident of the Texson facility had allegedly raped a four-year-old
girl. James Lauderdale, a nearby business owner, stated that he believed his property has
been significantly devalued by the presence of the facility. 

Chief Juan Martinez of the Weslaco Police Department testified that sex offenders are
required to register with his office when they move into Weslaco. He stated that from the
time the Texson facility opened, fifty-seven sex offenders living in that facility had
registered in his office. Martinez stated that since sex offenders have been registering,
a total of 105 had registered in his office. Martinez also corroborated the alleged rape
of the four-year-old by a former resident of the facility. 

Finally, Bonner testified. He recalled that the issue of sex offenders had come up at
the pre-approval public hearings. Bonner stated that at the hearings, "a member of
the Texas Department of Criminal Justice [stated] that there could be sex offenders
located at this facility." Bonner acknowledged that nothing in the minutes of the
public hearings reflects any discussion of housing sex offenders at the facility. 

After hearing this testimony and receiving into evidence, without objection, the
minutes of all relevant meetings, the trial court granted the temporary injunction. 

The Appeal 

We note that the order granting the temporary injunction does not include a provision
for a trial date. Neither party raises this defect in its brief. Both sides stated at oral
argument that the lack of a trial setting could readily be cured by the trial court. As a
practical matter, Texson concedes that, for all practical purposes, no additional evidence
will be presented at a hearing on a permanent injunction and that the facts and law have
essentially been developed. As such, we conclude the existing order is temporary only in
designation. 

By its second issue, Texson contends that in granting the temporary injunction, the
trial court incorrectly applied the law to undisputed facts by enforcing a municipal
zoning action that is allegedly void under state law. Texson argues that conditional use
permits constitute zoning regulations and that state law specifies a mandatory procedure
for the amendment, repeal, or other change of a zoning regulation. See Tex. Loc.
Gov't Code Ann. 211.002, 006-007 (Vernon 1998). Texson argues that because certain
elements of this procedure were not followed, the action to revoke the permit is void.
Similarly, by its third issue, Texson contends that by granting the injunction, the trial
court has enforced the revocation of its conditional use permit in violation of Texson's
vested rights to the property and its use. 

A city's adoption and amendment of a zoning ordinance is an exercise of its legislative
power. Thompson v. City of Palestine, 510 S.W.2d 579, 581 (Tex. 1974). An
amendment of any ordinance is accomplished by the ratification of some legal document
which defines the term of such an amendment. See Sherwood Lanes, Inc. v. City of San
Angelo, 511 S.W.2d 597, 598 (Tex. Civ. App.--Austin 1974, writ ref'd n.r.e.) (grant
of specific use permit accomplished by enacting ordinance); City of Lubbock v.
Whitacre, 414 S.W.2d 497, 499 (Tex. Civ. App.--Amarillo 1967, writ ref'd n.r.e.)
(same). Our review of the record reveals no legal document which purports to amend the
comprehensive zoning ordinance of the City of Weslaco. Rather, the record includes a
letter which states that the permit which Texson sought had been granted. This letter does
not state with any specificity the terms of the permit. Such informal procedures indicate
to us that the City's practice is akin to the grant of a use, rather than an amendment of
the comprehensive zoning ordinance. 

Additionally, a city is vested with broad discretion to exercise its police power to
promote "the public health, safety, morals, or general welfare" of the
community. Tex. Loc. Gov't Code Ann. 211.001 (Vernon 1998). It is well-settled that a city
can amend zoning ordinances as public necessity demands, under the auspices of its police
power, and by so doing, may eliminate almost any existing use. See City of Pharr
v.Tippitt, 616 S.W.2d 173, 176 (Tex. 1981); City of Univ. Park v. Benners,
485 S.W.2d 773, 778 (Tex. 1972); Williamson Pointe Venture v. City of Austin, 912
S.W.2d 340, 343 (Tex. App.--Austin 1995, no writ). In order to show that an exercise of
the police power was not lawful, Texson "was under the burden of showing that no
conclusive, or even fairly issuable facts or conditions exist in support of that
exercise." Benners, 485 S.W.2d at 779. It is evident from the record that
the City, based on the alleged rape of a young girl by a man associated with the Texson
facility and the other objections of citizens to the housing of sex offenders in the
facility, has sought to eradicate the danger associated with the facility. The City's
action was a permissible exercise of its police power. 

Moreover, contrary to Texson's third issue, "no property owner has a vested
interest in particular zoning categories." Williamson Pointe Venture, 912
S.W.2d at 343 (emphasis supplied) (citing City of Pharr, 616 S.W.2d at 176)).
Otherwise, "a lawful exercise of the police power by the governing body would be
precluded." Benners, 485 S.W.2d at 778. Texson cites us to no authority, and
we find none, which suggests otherwise. Contrary to its assertions, furthermore, Texson
was not deprived of notice of the City's intent to revoke the permit. The record clearly
shows that the City Commission considered this issue at a series of public meetings and
that prior to each of these meetings, notice was posted that the issue would be considered
and that action might be taken. 

We are not called upon in this case to decide what, if any, liability the City may have
in connection with the revocation of the permit and express no opinion on the subject. 

Thus, we find that the City validly revoked Texson's conditional use permit.
Accordingly, we overrule Texson's second and third issues. 

By its first issue, Texson contends that the injunction does not maintain the status
quo. The status quo to be preserved is "the last, actual, peaceable, uncontested
status that preceded the controversy." State v. Southwestern Bell Tel. Co.,
526 S.W.2d 526, 528 (Tex. 1975); AIG Risk Mgmt., Inc. v. Motel 6 Operating L.P.,
960 S.W.2d 301, 309 (Tex. App.--Corpus Christi 1997, no pet.). After reviewing the record,
it is clear that Texson knew about the City's action in March, 1999, and had agreed to
vacate the premises by August 31, 1999. Texson never complained about the validity of the
City's action until it became final, and then, Texson simply chose to ignore the action,
rather than contesting it. Had Texson wanted to maintain its continued operation of the
facility as the status quo, it could have and should have sought its own injunctive
relief. Not having done so, Texson cannot now complain of an otherwise uncontested action
taken almost six months earlier. 

Texson's first issue is overruled. 

The order of the trial court is AFFIRMED. 





__________________________________ 

ROBERT J. SEERDEN, Chief Justice 



Do not publish. 

Tex. R. App. P. 47.3. 



Opinion delivered and filed 

this 23rd day of March, 2000.