**Pastor Rick BARR and Philemon Homes, Inc., Appellants,**

v.

**The CITY OF SINTON, Appellee.**

No. 13–03–727–CV.

Court of Appeals of Texas,
Corpus Christi–Edinburg.

Nov. 23, 2005.

Rehearing Overruled Dec. 22, 2005.

Bradford M. Condit, Corpus Christi, for Appellants.

Carlos Villarreal, Hermansen, McKibben, Woolsey, James F. McKibben, Jr., Hermansen, McKibben, Woolsey, for Appellee.

Before Chief Justice VALDEZ and Justices HINOJOSA and RODRIGUEZ.

## MEMORANDUM OPINION[1]

Memorandum Opinion by Chief Justice VALDEZ.

In this declaratory action, appellants, Pastor Rick Barr and Philemon Homes, Inc. (Pastor Barr), sought a determination of whether an ordinance adopted by appellee, the City of Sinton (City), was constitutional and whether it violated the Texas Religious Freedom Act. *See* Tex. Const.

---

1. As this is a memorandum opinion and because all issues of law presented by this case are well settled and the parties are familiar with the facts, we will not recite the law and the facts in this opinion except as necessary to advise the parties of the Court's decision and the basic reasons for it. *See* Tex.R.App. P. 47.4.

art. I, §§ 3, 3a, 6, 8, & 27[2]; Tex. Civ. Prac. & Rem.Code Ann. §§ 110.001–.012 (Vernon 2005). The trial court denied Pastor Barr's requested relief. By twelve issues, Pastor Barr contends that the trial court erred (1) in failing to enter appropriate findings of fact and conclusions of law, (2) in failing to hold that the ordinance was unconstitutional and/or violated the Religious Freedom Act, (3) in finding chapter 244 prohibited Pastor Barr's use of the homes, (4) in finding no compensable damages because the parties agreed to bifurcate the trial as to liability and damages, (5) in finding chapter 509 of the Texas Government Code prohibited Pastor Barr's use of the homes, and (6) in finding the evidence legally or factually sufficient to establish certain findings or conclusions. We affirm.

## I. Background

Pastor Richard Barr owns two homes that are operated by his corporation, Phi-lemon Homes, Inc. These homes are operated to provide housing for parolees and probationers. They are located across the street from Pastor Barr's sponsoring church and within the boundaries of the City.

On April 26, 1999, the City enacted Ordinance No.1999–02 which added section 154.026 to the City's municipal code. This ordinance prohibits the act of locating a correctional or rehabilitation facility within 1,000 feet of certain land areas. Ordinance 1999–02 is the basis of this appeal.

## II. Appropriate Findings of Fact and Conclusions of Law

■ By his first issue, Pastor Barr contends that the trial court erred in failing to enter appropriate findings of fact and conclusions of law. After the trial court entered its findings and conclusions,[3] Pastor Barr requested additional findings of fact

2. Section 3 of the Texas Constitution provides equal rights, section 3a equality under the law, section 6 freedom of worship, section 8 freedom of speech and press, and section 27 freedom to assemble. *See* Tex. Const. art. I, §§ 3, 3a, 6, 8, & 27.

3. The trial court made the following findings of fact and conclusions of law:

    1. The City ... Ordinance 199–02, adding Section 156.026 to the City Code to zone for correctional and rehabilitation facilities (hereinafter "the Ordinance"), was violated by [Pastor Barr's] facilities.

    2. [Pastor Barr] operated a correctional or rehabilitation facility under contract with a state agency or a political subdivision of the state and housed persons convicted of misdemeanors or felonies or children found to have been engaged in delinquent conduct.

    3. Local consent was not given for [Pastor Barr] to operate such facility within 1000 feet of a residential area, a primary or secondary school, property designated as a public park or public recreation area by the state or a political subdivision of the state or a church, synagogue, or other place of worship.

    4. Pastor Barr operated such facility within 1000 feet of a residential area, a primary or secondary school, property designated as a public park or public recreation area by the state or a political subdivision of the state or a church, synagogue, or other place of worship.

    5. [Pastor Barr's] facility was in violation of Texas Local Government Code Annotated, Section 244.003.

    6. Because [Pastor Barr's] facility was in violation of the Texas Local Government Code, state law precludes [Pastor Barr] from operating the facility regardless of the city's zoning ordinance.

    7. The ordinance did not substantially burden [Pastor Barr's] free exercise of religion, freedom of assembly and association, or freedom of speech rights.

    8. The ordinance was in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest.

    9. The ordinance was rationally related to a legitimate state purpose.

    10. No amount of compensable damages was suffered by [Pastor Barr] as a result of [the City's] conduct.

and conclusions of law.[4] Now on appeal, Pastor Barr complains that, given the circumstances of this particular case, he can only guess at the reasons for the trial court's decision. We disagree.

11. The ordinance did not violate the Religious Freedom Act, Texas Civil Practice & Remedies Code, Chapter 110, nor the Texas Constitution, Article I, Sections 3, 3a, 6, 8, 19, and 27.

12. [Pastor Barr's] facility did not provide levels of security appropriate for the population served by the facility, including as a minimum a monitored and structured environment in which the residents' interior and exterior movements and activities can be supervised by specific destination and time.

13. [Pastor Barr's] facility did not meet the minimum standards for community correction facilities under Texas Government Code, Section 509.006(c).

14. Because [Pastor Barr's] facility did not meet the minimum standards for community correction facilities, state law precludes [Pastor Barr] from operating a facility regardless of any city ordinance.

15. There was no wrongful act committed by the [City].

16. There was no imminent harm suffered or to be suffered by [Pastor Barr].

17. [Pastor Barr has] not suffered and will not suffer any irreparable injuries.

18. [Pastor Barr] failed to give notice as required by the Religious Freedom Act.

4. Challenging the trial court's findings of fact and conclusions of law generally, Pastor Barr contends that the trial court erred when it did not file additional findings and conclusions in response to the following requests:

2. Does the [c]ourt find that [Pastor Barr's] use of the home is pursuant to a contract with the State of Texas or any of its subdivisions? If so, what specific elements of Defendant's claim of contract does the [c]ourt find?

5. Does the [c]ourt find that the ordinance in question is in furtherance of a compelling governmental interest? If so, what is the specific interest?

7. If the [c]ourt's decision is based on limitations, what date does the [c]ourt find that [Pastor Barr] knew or should have known of the substantial burden on [Pastor Barr's] free exercise of religion?

In this declaratory action, Pastor Barr challenges the constitutionality of the City ordinance. The trial court made findings of fact and conclusions of law in support of the constitutionality of the ordinance. Ad-

8. Did the ... City arbitrarily and unreasonably use its power?

9. Does the [c]ourt find that [Pastor Barr's] use of the home constitutes a nuisance? If so, in what way?

10. Did the [c]ourt review the ordinance as "content based"?

11. Did the [c]ourt review the ordinance by a "strict scrutiny" standard?

12. Does the [c]ourt find that the ordinance is narrowly drawn to serve a compelling state interest that reasonably regulates the time, place, and manner of permitted speech? If so, what is the compelling state's interest?

13. Does the [c]ourt find that the ordinance leaves open ample channels for [Pastor Barr's] use of the home as a place for people who have been incarcerated to live together (assemble) in homes governed by Christian principles because that is the purpose of the homes' existence? If so, what other channels does the [c]ourt find are available to [Pastor Barr] so they can assemble for this purpose?

14. Does the [c]ourt find that [Pastor Barr's] use of the home is a ministry or a profit making venture?

15. Does the [c]ourt find that as long as it is not the intent of a property owner to house a person who comes under the ordinance's scope the ordinance is not violated?

16. Does the [c]ourt find that [Pastor Barr's] use of the home is substantially motivated by a sincere religious belief?

17. Does the [c]ourt find that the ordinance regulating where a Class C misdemeanant lives is a compelling governmental interest?

18. Does the [c]ourt find that there is a U.S. Government law that regulates where a Class C misdemeanant lives that constitutes a compelling governmental interest? If so, state the substance of this law.

19. Does the [c]ourt find that [the City] enacted this ordinance to specifically target [Pastor Barr's] operation of the homes?

20. Does the [c]ourt find that the ordinance restricts [Pastor Barr's] free speech that occurs in the homes?

ditionally, the trial court made findings of fact and conclusions of law regarding Pastor Barr's claim that the ordinance violated the Religious Freedom Act. "Findings of facts are the decisions of the judge and reflect the ultimate and controlling factual issues of a plaintiff's claim or a defendant's defense. From the findings of fact the trial court judge draws his conclusions of law which support his disposition of the case at bar." *James Holmes Enter., Inc. v. John Bankston Constr. & Equip. Rental, Inc.,* 664 S.W.2d 832, 834 (Tex.App.-Beaumont 1983, writ ref'd n.r.e.) (op. on reh'g); *see ASAI v. Vanco Insulation Abatement, Inc.,* 932 S.W.2d 118, 122 (Tex.App.-El Paso 1996, no writ) (holding that a trial court is only required to make findings of fact and conclusions of law that are appropriate). In this case, the findings of fact and conclusions of law filed by the trial court addressed the controlling issues that are dispositive of this case.

■ A request for additional findings and conclusions is appropriate when the additional requested findings relate to an ultimate or controlling issue. Tex.R. Civ. P. 298; *Dura–Stilts Co. v. Zachry,* 697 S.W.2d 658, 661 (Tex.App.-Houston [1st Dist.] 1985, writ ref'd n.r.e.); *see Nat'l Commerce Bank v. Stiehl,* 866 S.W.2d 706, 707 (Tex.App.-Houston [1st Dist.] 1993, no writ). However, a trial court does not commit error where it ignores requests for findings that are evidentiary; requests that ask "how" the court arrived at its findings or ask for explanations of the court's ruling in the case. *Dura–Stilts,* 697 S.W.2d at 661. In this case, the requested findings and conclusions (1) inquire into detailed legal or factual issues that were not ultimate issues, (2) are evidentiary in that they ask how the court arrived at its findings, or (3) have been answered by the trial court's findings of fact and conclusions of law. Thus, the trial court did not err in refusing to file additional findings and conclusions.

■ Furthermore, even were we to conclude error, it was not harmful. *See* Tex.R.App. P. 44.1(a)(2). "Where refusal does not prevent the adequate presentation of the matter being complained of on appeal, no reversible error has occurred." *Tamez v. Tamez,* 822 S.W.2d 688, 693 (Tex.App.-Corpus Christi 1991, writ denied); *see ASAI,* 932 S.W.2d at 122. Pastor Barr was not prevented from adequately presenting his complaints on appeal due to the trial court's refusal to make such additional findings. We find Pastor Barr suffered no injury due to the trial court's refusing his request for additional findings and conclusions. *See Tamez,* 822 S.W.2d at 693 (providing that if the record shows the complaining party did not suffer injury, the failure to make such additional findings does not require reversal).

We overrule Pastor Barr's first issue.

### III. Constitutional Rights and the Religious Freedom Act

By his second issue, Pastor Barr generally contends the trial court erred in failing to hold that the City ordinance is unconstitutional and/or violates the Religious Freedom Act.

City ordinance number 1999–02, an ordinance adding section 156.026 to the City's code to zone for certain correctional and rehabilitation facilities, provides the following, in relevant part: "A correctional or rehabilitation facility may not be located in the City of Sinton within 1000 feet of a residential area, a primary or secondary school, property designated as a public park or public recreation area by any governmental authority, or a church, synagogue, or other place of worship." The ordinance defines "correctional or rehabilitation facility" as follows:

a residential facility that is not operated by the federal government, the state of Texas, [or] San Patricio County, and that is operated for the purpose of housing persons who have been convicted of misdemeanors or felonies or children found to have engaged in delinquent conduct, regardless of where the persons are housed (i) while serving a sentence of confinement following conviction of an offense; (ii) as a condition of probation, parole, or mandatory supervision; or (iii) within one (1) year after having been released from confinement in any penal institution.

### A. Constitutional Rights

#### 1. Freedom of Religion

■■■ Pastor Barr first asserts that the ordinance violated his freedom of worship. *See* Tex. Const. art. 1, § 6. However, applying the federal constitution,[5] the United States Supreme Court has concluded that an individual's religious beliefs do not excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate. *Employment Div., Dep't of Human Res. v. Smith,* 494 U.S. 872, 878–79, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (superceded by statute on other grounds as stated in *Cutter v. Wilkinson,* 544 U.S. 709, 714, 125 S.Ct. 2113, 2118, 161 L.Ed.2d 1020 (2005)); *see Pharr v. Tippitt,* 616 S.W.2d 173, 175 (Tex. 1981) (setting out that "[z]oning is an exercise of a municipality's legislative power"). Religious beliefs do not excuse one's compliance with "generally applicable" laws such as a state's drug laws, *see id.* at 890,

110 S.Ct. 1595, or a city's zoning regulations. *See City of Boerne v. Flores,* 521 U.S. 507, 535, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). Because the City's zoning ordinance is a valid law prohibiting conduct that it is free to regulate, *see id.; Smith,* 494 U.S. at 878–79, 110 S.Ct. 1595, and because it is generally applicable to any person desiring to operate correctional or rehabilitation facilities, *cf. Islamic Ctr. v. City of Starkville,* 840 F.2d 293, 294 (5th Cir.1988) (holding zoning law unconstitutional "as applied" because a municipality's officials had acted with blatant discrimination in denying a variance to an Islamic group while granting a variance to every Christian group that had ever requested one), we conclude Pastor Barr's freedom of religion claims lack merit.

#### 2. Freedom of Speech

■■■ Pastor Barr also contends that the ordinance not only impacts his freedom of worship but also his freedom of speech. *See* Tex. Const. art. I, § 8. He asserts that it is his underlying act of conveying a Christian message in the homes—his purpose or motivation for the homes' existence—that, in this case, prohibits the housing of persons who have been convicted of misdemeanors or felonies within one year of being released from any penal institution. Pastor Barr urges that the ordinance punishes the Christian thought or message behind the act, not the act of housing itself, and that it is what is spoken inside the homes that puts him in violation of the ordinance. He contends, therefore, that the ordinance is content based, not

---

**5.** The Texas and federal constitutional provisions regarding the exercise of religion are treated as coextensive unless a party argues that different treatment is required by such factors as the state provision's text, history, and purpose. *See Tilton v. Marshall,* 925 S.W.2d 672, 677 n. 6 (Tex.1996); *see also Fort Worth Osteopathic Hosp., Inc. v. Reese,* 148

S.W.3d 94, 98 (Tex.2004) (setting out similar analysis applied to equal protection clause); *Tex. Dep't of Transp. v. Barber,* 111 S.W.3d 86, 106 (Tex.2003), *cert. denied,* 540 U.S. 1177, 124 S.Ct. 1404, 158 L.Ed.2d 77 (2004) (setting out similar analysis applied to free speech clause). Pastor Barr has made no such argument.

content neutral, and should have been reviewed under a strict scrutiny standard.[6] *See Tex. Dep't of Transp. v. Barber,* 111 S.W.3d 86, 92–98 (Tex.2003), *cert. denied,* 540 U.S. 1177, 124 S.Ct. 1404, 158 L.Ed.2d 77 (2004).

■ Assuming without determining whether the state constitution's freedom of speech clause is applicable in this case, the issue before us then is whether the ordinance is content neutral or content based. In making the determination of what is content neutral, the standard is "whether the government has adopted a regulation of speech because of disagreement with

the message it conveys.... The government's purpose is the controlling consideration." *Barber,* 111 S.W.3d at 94 (quoting *Ward v. Rock Against Racism,* 491 U.S. 781, 791, 109 S.Ct. 2746, 105 L.Ed.2d 661 (1989)). In this case, we find nothing in the record that would establish that the City adopted the ordinance to regulate speech because it disagreed with the Christian message Pastor Barr was conveying or with his motivation to clothe, house, and feed the needy. The purpose of the legislation was not to stifle speech but rather to protect the public by regulating the location of correctional and rehabilitation facilities.[7] *Cf. City of Renton v.*

6. Pastor Barr also generally contends that the ordinance makes the housing illegal only if the purpose of the property owner is to house persons who have been released from incarceration. He asserts the ordinance makes the *motivation of the housing illegal*—not the actual act of housing itself. Pastor Barr contends, for example, that if one owns an apartment building that houses 100 child molesters, rapists, and gangsters, it would not be illegal; however, if it is one's purpose to house only one person who has been convicted of passing a hot check for $20.00, a class C misdemeanor, then he would be breaking the law. He argues that the ordinance punishes the thought behind the act—not the act itself; if the motivation is to clothe, house, and feed the needy, regardless of any rational connection to the public's health or safety, then the motivation underlying the act makes the act illegal and the law is content based. He complains that the ordinance is not a rational restriction on the use of privately owned real property, but an arbitrary use of zoning power that is unreasonable and, thus, unconstitutional.

We construe these contentions as challenges to the ordinance's alleged restriction of expressive conduct and will consider them as they may relate to freedom of speech. To the extent this language could be construed as a due course of law or substantive due process claim, it has not been adequately briefed and therefore is waived. *See* Tex.R.App. P. 38.1(h) (providing contentions on appeal must be supported by clear and concise arguments with *appropriate citations to authorities and* to the record).

7. Dana J. Hendrick, the Director of the Community Supervision and Corrections Department for the judicial district, including Aransas, Bee, Live Oak, McMullen, and San Patricio Counties, testified as follows:

The CCSDs [sic] in general to the Texas Department of Criminal Justice do not place offenders in facilities that are not complying with statutes that apply to community corrections facilities. So it applies to Health and Safety Code issues, Fire Code issues, location and siting. Because obviously if we don't follow the law, we would end up congregating offenders in areas of the community that don't meet the statutory provisions that we must observe and would create obviously a problem with the community.... Under our guidelines we would—certainly for security and protection of the public we need to know that there is 24–hour supervision as well as accountability for those offenders because any time you congregate numbers of offenders, the odds of problems occurring go up. And there's actually a staff ratio that we follow basically which is one staff member for every forty-eight residents 24 hours a day. Hendrick further testified that he, had some concerns about the siting of the facility, compliance with the *statute, the fact that* [Barr] might be circumventing the statutory restrictions on a community corrections facility. And our department would not do that because we are responsible for supervising offenders on the same guidelines across the board statewide. So because of what he was proposing we felt it was improper to site a

*Playtime Theatres, Inc.,* 475 U.S. 41, 44, 106 S.Ct. 925, 89 L.Ed.2d 29 (1986) (holding that an ordinance could be treated as content neutral because its purpose was aimed not at the content of the speech, but rather at the secondary effects of the business on the surrounding community). It is this purpose that controls. *See Barber,* 111 S.W.3d at 86, 94. Furthermore, First Amendment cases recognize that statutes may also be content neutral because they are justified without reference to the content of the regulated speech. *See id.* at 100 (citing *City of Renton,* 475 U.S. at 48, 106 S.Ct. 925). The ordinance in this case does not reference the content of the regulated speech, if any. We conclude the ordinance is not content based as Pastor Barr contends.[8] Thus, his assertion that the trial court should have applied the strict scrutiny standard fails as to the freedom of speech claim.

### 3. Right of Assembly

■ Pastor Barr also contends the ordinance prohibits people who have been incarcerated from living together or assembling in homes governed by Christian principles because that is the purpose of the homes' existence. *See* Tex. Const. art. 1, § 27. However, the constitutional rights of assembly and association do not extend a right for unrelated persons to live together in violation of a municipal zoning ordinance. *See Village of Belle Terre v. Boraas,* 416 U.S. 1, 7–8, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974) (upholding ordinance imposing limits on type of groups that could occupy single-family dwelling). Thus, this claim also lacks merit.

### 4. Equal Rights and Equality under the Law

■ Finally, Pastor Barr complains that the ordinance violates section 3 and section 3a of the constitution because he was treated unequally as compared to someone who intends to house the same people but for a different purpose, i.e., *profit v. ministry. See* Tex. Const. art. 1, §§ 3, 3a. However, there is nothing in the record showing that a similarly situated class has been treated differently in this case. Furthermore, we cannot conclude that the ordinance affects one class differently from any other class that is attempting to house groups of previously incarcerated persons. *Cf. Palmer v. Thompson,* 403 U.S. 217, 225, 91 S.Ct. 1940, 29 L.Ed.2d 438 (1971) (concluding that there is no violation of equal protection when the

---

facility and circumvent the intent of the legislature to locate facilities with consent of the community through public hearings and distances appropriate based on law.

**8.** As authority supporting his argument on this issue, Pastor Barr relies on *Barber v. Tex. Dep't of Transp.,* 49 S.W.3d 12 (Tex.App.-Austin 2001), *rev'd,* 111 S.W.3d 86 (Tex.2003). However, the supreme court reversed the Austin Court, concluding that the statute in question was content neutral, and therefore a lesser level of scrutiny should be utilized in reviewing the statute. *Barber,* 111 S.W.3d at 89, 103. Pastor Barr also cites *City of Corpus Christi v. Allen,* 152 Tex. 137, 254 S.W.2d 759 (1953), as authority for his contention. The court in *Allen* concluded that there had been a taking as a consequence of the zoning

change. *Id.* at 141–42, 254 S.W.2d 759. Pastor Barr did not plead "a taking." Therefore, *Allen* does not support Pastor Barr's position. Finally, Pastor Barr quotes, as authority, language from both the majority and the dissent in *Ex Parte Tucci,* 859 S.W.2d 1, 5, 62 (Tex. 1993). *Ex Parte Tucci,* however, involved the violation of a temporary restraining order that barred persons from protesting in certain areas around abortion clinics so that access to the clinic could be maintained. *Id.* at 3. The supreme court in *Ex Parte Tucci* addressed the issue of whether the injunctive relief granted was the least restrictive means of preventing the alleged harm. *Id.* at 6. The present case does not involve the violation of a restraining order or an injunction.

state action affected blacks no differently than whites). Thus, this argument fails.

## B. The Texas Religious Freedom Act[9]

██ Section 110.003(a) of the Religious Freedom Act prohibits a government agency from substantially burdening a person's free exercise of religion. Tex. Civ. Prac. & Rem.Code Ann. § 110.003(a) (Vernon 2005). Subsection (a) does not apply, however, if the government agency can demonstrate that the application of burden is in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest. *Id.* § 110.003(b). The Religions Freedom Act defines "free exercise of religion" as "an act or refusal to act that is substantially motivated by sincere religious belief." *Id.* § 110.001(a)(1).

Pastor Barr testified that Philemon Restoration Homes, Inc., "is a ministry that reaches out to men [who] are being released from prison or men who also are on the street" meaning men "who are not incarcerated." The ministry provides "for religious instruction and counsel and to help." Pastor Barr further testified that he owned two residency homes that are operated by the corporation. Assuming without determining that Pastor Barr's ministry is substantially motivated by sincere religious belief, we nonetheless conclude that while the ordinance precludes Pastor Barr from operating a correctional or rehabilitation facility within 1000 feet of residential areas, schools, parks, recreation areas, and places of worship, which may include most of the City,[10] there is nothing in the ordinance that precludes him from

9. The Religious Freedom Act was enacted by the Texas legislature to provide the rights and protections that the federal statute would have afforded had it not been ruled unconstitutional in *City of Boerne v. Flores*, 521 U.S. 507, 512, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997), as applied to the states. *See* Senate Res. Ctr., *Bill Analysis–S.B. 138 (Enrolled Ver.)* (July 7, 1999). Congress had enacted the Religious Freedom Restoration Act (RFRA) to avoid the effect of the Supreme Court's ruling in *Employment Div., Dep't of Human Res. v. Smith*, 494 U.S. 872, 890, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990) (holding that neutral, generally applicable laws may be applied to religious practices even when not supported by a compelling governmental interest) (superceded by statute as stated in *Cutter v. Wilkinson*, 544 U.S. 709, 714, 125 S.Ct. 2113, 2118, 161 L.Ed.2d 1020 (2005)). *City of Boerne*, 521 U.S. at 512, 117 S.Ct. 2157. The goal of the federal statute was to return religious freedom law to its perceived state prior to April 17, 1990, when *Smith* was decided. *See id.; see also* Tex. Civ. Prac. & Rem. Ann.Code § 110.010 (Vernon 2005) (providing that a municipality has no less authority to adopt or apply laws and regulations concerning zoning, land use, planning, traffic management, urban nuisance, or historic preservation than the authority of the municipality that existed under the law as interpreted by the federal courts before April 17, 1990).

10. To support his argument, Pastor Barr refers this Court to the following testimony provided by Jackie Knox, Sinton's city manager:

Q: Is there any property within the city limits of Sinton that you are aware of that would qualify not being 1000 feet from any church, school, part . . . or residential area?
A: I have not checked it out, but it would probably be minimal locations.
Q: In other words, probably pretty close to nonexistent?
A: Possibly.
Q: So in reality what the City of Sinton has done was exclude from its board all activities relating to either a felon or misdemeanor having been released within one year, prohibiting that individual from receiving any rehabilitation?

. . .

Q: . . . Would [the ordinance] exclude every *house* in the City of Sinton to your knowledge?
A: To my knowledge it was to prohibit groups that would prohibit—that would be in violation of the law, the state law.
Q: Groups is what your understanding is; not individuals?
A: Yes, sir.

providing his religious ministry to parolees and probationers, from providing instruction, counsel, and helpful assistance in other facilities in Sinton, or from housing these persons outside the City and providing his religious ministry to them there.

Moreover, Texas courts have long applied zoning ordinances to church-operated schools and colleges, supporting the conclusion that zoning ordinances do not substantially burden such auxiliary religious operations. In *Fountain Gate Ministries, Inc., v. City of Plano*, 654 S.W.2d 841, 844 (Tex.App.-Dallas 1983, writ ref'd n.r.e.), the court held that the operation of a college by a church did not implicate federal First Amendment Concerns. *Id.* Therefore, a municipal zoning ordinance that precluded use of land for a college was upheld over a church's objection. *Id.* Likewise, in *Heard v. City of Dallas*, 456 S.W.2d 440, 444 (Tex.App.-Dallas 1970, writ ref'd n.r.e.), the court held that a city ordinance applied to a day nursery or kindergarten operated in a church vicar's house even though religious training and worship were also provided. *Id.; cf. Christian Academy v. City of Abilene*, 62 S.W.3d 217, 219 (Tex.App.-Eastland 2001, no pet.) (citing pre–1990 cases holding that municipal building codes applied to church-operated schools).

We conclude Pastor Barr's religious rights were not substantially burdened by the City ordinance. Therefore, the Religious Freedom Act has not been violated. Accordingly, we overrule Pastor Barr's second issue.

## IV. Remaining Issues

■ In issues five, six, and seven, Pastor Barr complains of the sufficiency of the evidence to establish the following: (1) that the ordinance did not substantially burden Pastor Barr's free exercise of religion, freedom of assembly and association, or freedom of speech rights; (2) that the ordinance was in furtherance of a compelling governmental interest and is the least restrictive means of furthering that interest; and (3) that the ordinance was rationally related to a legitimate state purpose. However, in accordance with rule 38.1(h) of the Texas Rules of Appellate Procedure, we will only consider contentions that are supported by clear and concise arguments with appropriate citations to authorities. Tex.R.App. P. 38.1(h). Because these issues are not adequately briefed, we overrule Pastor Barr's fifth, sixth, and seventh issues. *See id.*

Finally, we need not address Pastor Barr's remaining issues because they are not dispositive to this appeal. *See* Tex. R.App. P. 47.1.

## V. Conclusion

Based on the facts and issues before us in this appeal, we affirm the judgment of the trial court.