### The CITY OF UNIVERSITY PARK, Texas, et al., Petitioners,

v.

### Ruth Hagaman BENNERS, Executrix, Respondent.

### No. B–3321.

Supreme Court of Texas.

Oct. 4, 1972.

Rehearing Denied Nov. 8, 1972.

---

Dick P. Wood and Dick P. Wood, Jr., Dallas, for petitioners.

Fred H. Benners, Dallas, for respondent.

STEAKLEY, Justice.

This case concerns a comprehensive zoning ordinance of the City of University Park of Dallas County enacted under authority of Art. 1011a,[1] et seq, which would terminate the nonconforming commercial use of two lots.[2] The property is part of the estate of Mrs. Cecil L. Simpson and was purchased by her husband in 1926. Mrs. Ruth Hagaman Benners is the Executrix of the estate of Mrs. Simpson and in such capacity was plaintiff below and is respondent here. The trial court granted the motion of the City for summary judgment but this was reversed by the court of civil appeals. The intermediate court ruled the ordinance invalid as it applied to the lots and permanently enjoined the City from enforcing its provisions. 477 S.W.

2d 326. We reverse the judgment of the intermediate court and affirm that of the trial court.

The commercial use of the lots in question commenced in 1925 prior to enactment in 1926 of the statutes authorizing cities to exercise zoning powers. In 1929, the City of University Park adopted a zoning ordinance under which the lots were zoned for commercial use. This classification was carried forward in subsequent amendments until September 18, 1940, when the City adopted a successor comprehensive zoning ordinance which, among other things, changed the classification of the lots, together with certain other like property in the area, from business to "C" two-family dwelling district. The ordinance included this provision:

"All buildings located in the "A" Single-Family Dwelling District, "B" Single-Family District, "C" Two-Family Dwelling District, or "D" Apartment District, that are used as a nonconforming use for commercial or industrial purposes at the time of the passage of this ordinance shall be removed or converted and their premises thereafter devoted to uses permitted in the district in which they are located prior to the first day of January, 1965."

On October 20, 1952, the City adopted its current zoning ordinance and the property in question remained in a "C" two-family dwelling district. This ordinance also carried forward the provision for termination of nonconforming uses prior to January 1, 1965.

On January 6, 1965, respondent was directed to discontinue the nonconforming commercial use of the property, whereupon she appealed to the Board of Adjustment to overrule the order or, in the alternative, to grant a variance under which the business use of the two lots would be continu-

---

1. References are to Vernon's Annotated Texas Statutes.

2. Art. 1011c exempts from the zoning power of cities only nonconforming uses of property "actually and necessarily used in a public service business."

ed. After hearing all relief sought was denied by the Board. Respondent then filed this suit in the nature of a petition for certiorari in the district court seeking a review of the action of the Board of Adjustment and a declaration that the ordinance in question was invalid. Respondent states that the Board of Adjustment is only an incidental party and the question presented is the validity *vel non* of the zoning changes as to the two lots in question. The appeal from the denial of a variance has in effect been abandoned.

*Both parties filed motions for summary judgment.* The trial court sustained the City's motion for summary judgment and we copy in the margin the portions of the record which the court found "to constitute competent Summary Judgment evidence for purposes of these proceedings in accordance with the practice and procedures authorized by the Court herein." [3]

As stated, the judgment of the trial court was reversed by the court of civil appeals and judgment there rendered for the respondent; the court thereby, in effect, sustained respondent's motion for summary judgment. See Baccus v. City of Dallas, 454 S.W.2d 391 (Tex.1970), where we wrote that " . . . the burden is on a contestant to show that no conclusive or even controversial facts or conditions exist which offer support for action of a city's governing body in amending a zoning ordinance . . . . A contestant has the same burden when he seeks a summary judgment invalidating an ordinance."

The City as petitioner here argues its power to require discontinuance of the nonconforming use in question after allowing the property owners a reasonable period of time for what is termed "amortization" of their investment. The City also says that respondent did not show an abuse of administrative discretion but that, to the contrary, the summary judgment proofs established that conditions either affirmatively support passage of the ordinance or make that action issuable.

Respondent's essential position is twofold. She first says, in essence, that she and her predecessors in ownership held a vested right to use the lots for commercial purposes which could not be constitutionally abridged by a subsequently enacted zoning ordinance, regardless of the reasonableness of the exercise of the police power and of the period allowed for recoupment of the investment in the commercial improvements. She says there is a taking of property without compensation, contrary to Art. I, Sec. 17 of the Texas Constitution, Vernon's Ann.St., when she is required to terminate a pre-existing use rendered nonconforming by zoning regulations. She further says that the current ordinance, and its 1940 predecessor, were unreasonable and not required in the public interest because there were no changes in conditions that justified reclassification of the lots from business to residential. She argues particularly that her property and that of the entire neighborhood was developed in accordance with the initial 1929 zoning ordinance and was fully developed

3. (1) Return filed by defendants in compliance with Writ of Certiorari, including all exhibits filed therewith.

(2) Court Reporter Pinkston's statement of proceedings before the Board of Adjustment of the City of University Park.

(3) The Zoning Ordinances of the City of University Park duly adopted (a) Dec. 17, 1929; (b) Jan. 2, 1940; (c) Sept. 18, 1940; (d) Oct. 20, 1952.

(4) Plaintiff's verified Third Original Amended Petition and the verified Addendum to Plaintiff's Third Original Amended Petition.

(5) Defendants' Third Amended Original Answer.

(6) Plaintiff's verified First Amended Motion for Summary Judgment.

(7) Defendants' verified First Amended Motion for Summary Judgment.

(8) Plaintiff's Answer to Defendants' Motion for Summary Judgment.

(9) Defendants' Answer to Plaintiff's First Amended Motion for Summary Judgment.

(10) All affidavits filed by both plaintiff and defendants separately as well as attached to or incorporated in pleadings filed herein.

prior to the September 1940 comprehensive zoning ordinance which changed the classification. She concludes her brief in this Court with the summary copied in the margin.[4]

A nonconforming use of land or buildings is a use that existed legally when the zoning restriction became effective and has continued to exist. Swain v. Board of Adjustment of the City of University Park, 433 S.W.2d 727 (Tex.Civ.App.1968, writ ref'd n. r. e.).

The power of a municipality to require the termination of existing uses of property rendered nonconforming under zoning regulations has been exhaustively examined. See 8A E. McQuillin, Municipal Corporations § 25.190 (3d ed. 1965); note, 44 T.L.R. 368 (1965); 2 E. Yokley, Zoning Law and Practice § 16–14 (3d ed. 1965); Katarincic, Elimination of Non-conforming Uses . . .—Concept Versus Law, 2 Duquesne U.L.Rev. 1 (1963); Comment, Non-Conforming Uses Under Zoning Ordinances, 7 Baylor L.Rev. 73 (1955); Comment, The Abatement of Pre-existing Nonconforming Uses under Zoning Laws: Amortization, 57 Northwestern U.L.Rev. 323 (1962); Anno. Validity of Provisions for Amortization of Nonconforming Uses, 22 A.L.R.3rd 1134. There is division among outside jurisdictions but the prevailing view recognizes the reasonable use of what is termed the "amortization" technique as a valid exercise of the police power. See Standard Oil Co. v. City of Tallahassee, 183 F.2d 410 (5th Cir. 1950) cert. den. 340 U.S. 892, 71 S.Ct. 208, 95 L.Ed. 647; National Advertising Company v. County of Monterey, 1 Cal.3d 875, 83 Cal. Rptr. 577, 464 P.2d 33 (1970); Board of Supervisors of Cerro Gordo County v. Miller, 170 N.W.2d 358 (Iowa—1969); Spurgeon v. Board of Commissioners of Shawnee County, 181 Kan. 1008, 317 P.2d 798 (1957); Grant v. Mayor and City Council of Baltimore, 212 Md. 301, 129 A. 2d 363 (1957); Naegele Outdoor Advertising Company of Minnesota v. Village of Minnetonka, 281 Minn. 492, 162 N.W.2d 206 (1968); Wolf v. City of Omaha, 177 Neb. 545, 129 N.W.2d 501 (1964); Lachapelle v. Town of Goffstown, 107 N.H. 485, 225 A.2d 624 (1967); Harbison v. City of Buffalo, 4 N.Y.2d 553, 176 N.Y.S.2d 598, 152 N.E.2d 42 (1958); City of Seattle v. Martin, 54 Wash.2d 541, 342 P.2d 602 (1959); Village of Gurnee v. Miller, 69 Ill.App.2d 248, 215 N.E.2d 829 (1966).[5]

The usual approach rests on the principle that there is not a legally significant difference between existing and prospective uses in land; and that the required termination of a pre-existing land use, with allowance for recoupment, is no different in kind from restrictions upon future land use alternatives. So it is concluded that termination does not constitute a "taking" in the eminent domain sense but an exercise of

---

4. "The City approved Respondent's property for business use three times—once in 1925 when it was built, again in 1929 in conjunction with its original comprehensive zoning ordinance, and again in January of 1940 after the 1929 zoning plan had been carried out and the entire area developed as prescribed therein. The record shows without dispute that there have since been no changes of any character in the neighborhood which would change the advisability and validity of such zoning. Under such circumstances it is incomprehensible how the City's attempted zoning change in question can be required to safeguard the same public under the same conditions as existed for years under the City's previously adopted comprehensive plan."

5. The minority view is stated in Hoffman v. Kinealy, 389 S.W.2d 745 (Mo.1965) : " . . . the amortization technique itself which would validate a taking *presently* unconstitutional by the simple expedient of *postponing* such taking for a 'reasonable' time. . . . [I]t would be a strange and novel doctrine indeed which would approve a municipality taking private property for public use without compensation if the property was not too valuable and the taking was not too soon . . . ." See also De Mull v. Lowell, 368 Mich. 242, 118 N.W.2d 232 (1962); United Advertising Corp. v. Raritan, 11 N.J. 144, 93 A.2d 362 (1952).

the police power in the public interest; and that such an enactment is subject to the same tests of validity as other legislative acts, i. e., whether it is reasonable and bears a fair relationship to the object sought to be obtained. See Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475 (1934); and Chicago, B. & Q. R. Co. v. Illinois ex rel. Grimwood, 200 U.S. 561, 26 S.Ct. 341, 50 L.Ed. 596 (1906).

This Court has considered constitutional attacks upon ordinances requiring cessation of nonconforming uses of property. City of Corpus Christi v. Allen, 152 Tex. 137, 254 S.W.2d 759 (1953); Swain v. Board of Adjustment of the City of University Park, 433 S.W.2d 727 (Tex.Civ. App.1968, writ ref'd n. r. e.); City of Dallas v. Fifley, 359 S.W.2d 177 (Tex.Civ. App.1962, writ ref'd n. r. e.).

*Allen* presented an ordinance adopted by the City of Corpus Christi in 1948 which required the cessation of certain nonconforming uses on January 1, 1950. The property in question had been used as an automobile wrecking yard prior to the adoption of the ordinance. It was in an area zoned as a "light industrial district" which was a nonconformity because such business under the ordinance could be operated only in a "heavy industrial district." There was no intrusion of a business in a residential area. This Court held the ordinance unconstitutional as applied to the facts there. It was emphasized that the nonconforming use did not appear harmful in any respect to public health, safety, morals or welfare; and that the exercise of the municipal power was unreasonable because of the small benefit to the City. It was made clear, however, that the conclusion there reached was not to be construed as a holding that the ordinance could not be constitutionally invoked to terminate a nonconforming use under other circumstances.

The Court in *Swain* sustained the denial of a variance and upheld an order of the Board of Adjustment directing the discontinuance of a nonconforming property use. The property was put to the nonconforming use of a gasoline service station after the passage of the original zoning ordinance. Additionally, the business use intruded into a residential area. The Court correctly held that *Allen* was not determinative of this factual situation. It is also noteworthy that the Court in *Swain* emphasized that the ordinance allowed a reasonable time for amortization and discontinuance of the nonconforming use. The same Court in *Fifley* had previously given weight to the fact that the property owner had recouped his investment in the property and had realized a profit therefrom.

█ There are strong policy arguments and a demonstrable public need for the fair and reasonable termination of nonconforming property uses which most often do not disappear but tend to thrive in monopolistic positions in the community.[6] We are in accord with the principle that municipal zoning ordinances requiring the termination of nonconforming uses under reasonable conditions are within the scope of municipal police power; and that property owners do not acquire a constitutionally protected vested right in property uses once commenced or in zoning classifications once made. Otherwise, a lawful exercise of the police power by the governing body of the City would be precluded. See City of McAllen v. Morris, 217 S.W.2d 875 (Tex.Civ.App.1948, writ ref'd); City of Farmers Branch v. Hawnco, Inc., 435 S.W.2d 288 (Tex.Civ.App.1968, writ ref'd n. r. e.); Stearman v. City of Farmers Branch, 355 S.W.2d 541 (Tex.Civ.App.1962, writ ref'd n. r. e.); Town of Renner v. Wiley, 458 S.W.2d 516 (Tex.Civ.App.1970, no writ); Standard Oil Co. v. City of Tallahassee, 183 F.2d 410 (5th Cir. 1950) cert. den. 340 U.S. 892, 71 S.Ct. 208, 95 L.Ed. 647.

█ The question which then occurs is whether respondent discharged the extraordinary burden of showing that the exer-

6. 9 U. of Chi.L.Rev. 477, 479 (1942).

cise of the police power here was not lawful. As complainant, she was under the burden of showing that no conclusive, or even fairly issuable facts or conditions exist in support of that exercise of the police power. Courts may not interfere unless a challenged ordinance is shown to represent a clear abuse of municipal discretion or unless there is conclusive evidence that a zoning ordinance is arbitrary either generally or as to particular property. City of Fort Worth v. Johnson, 388 S.W.2d 400 (Tex.Sup.1964); City of Bellaire v. Lamkin, 159 Tex. 141, 317 S.W.2d 43 (1958); City of San Antonio v. Pigeonhole Parking of Texas, Inc., 158 Tex. 318, 311 S.W.2d 218 (1958); City of Waxahachie v. Watkins, 154 Tex. 206, 275 S.W.2d 477 (1955).

■■■ The September 1940 ordinance, which changed the classification of respondent's two lots from commercial to residential, permitted the commercial use to continue until January 1, 1965; and the current October 1952 ordinance carried forward this authorization. Respondent did not show an abuse of municipal discretion in these provisions for termination of the nonconforming commercial use of the lots after January 1, 1965. As noted earlier, there is no difference in kind between terminating a land use which pre-dates a zoning change, with allowance for recoupment, and restricting future land uses not presently utilized. The former requires no more than that the property owner be placed in the equivalent position of the latter, i. e., that he be afforded an opportunity to recover his investment in the structures theretofore placed on the property. The reasonableness of the opportunity for recoupment thus afforded is to be measured by conditions at the time the existing use is declared nonconforming and not, as viewed by the intermediate court, by conditions upon expiration of the tolerance period. Here, the owner of the lots then in commercial use was notified that the non-conforming uses were to cease and that nonconforming structures were to be removed, or altered to conform within twenty-five years.[7] Respondent has made no showing of the 1940 capital investment in physical improvements on the lots. It is shown that a predecessor in interest paid $35,500 for the property in 1926; that net income realized from the commercial use of the property between 1940 and 1965 exceeded $80,000; and that the lots would have a residential value of $12,000 to $14,000 if cleared of the commercial structures. It is evident that the owners of the property were given sufficient time in which to terminate the commercial uses and to recoup any loss in property value occasioned by the reclassification of the lots from commercial use to residential use in 1940.

Respondent's second major attack is that the ordinances were unreasonable in the sense that there were no changes in conditions justifying the comprehensive changes effected by the September 1940 ordinance and carried forward in the 1952 ordinance. She particularly argues the shortness of time between the last amendment of the 1929 ordinance on January 2, 1940, and the September 1940 ordinance which included in its comprehensive provisions the change in classification of the lots in question from commercial to residential use. On their face, she says, these few months could not have witnessed changes in conditions sufficient to support the comprehensive changes effected by the September 1940 ordinance.

It is shown that the zoning ordinance of September 1940 as well as that of October 1952 dealt comprehensively with the entire City of University Park. Surrounded as it was by the City of Dallas, the objective was the facilitation of its development so as to properly accommodate its growing and projected population. The September 1940 ordinance discarded the original tripartite designations of the 1929 ordinance and re-

---

7. The sufficiency of time allowed to economically wind down the business on the present location and make new plans for continuing the business elsewhere may also be relevant to the question of reasonableness. There is no such issue here.

placed these with six uniform districts. Commercial use classifications were eliminated in some locations and created in other locations where considered beneficial in serving the whole community. The two lots in question were rezoned residential as were other commercial properties similarly isolated within predominately residential areas.

 The January 1940 amendment to the 1929 ordinance was not comprehensive in scope but was limited to certain changes pertaining to accessory buildings, to height requirements in the residential districts, and to enforcement procedures. As such, the amendment carried forward in substantial form the basic zoning plan of the 1929 ordinance, including the designations of districts and provisions concerning nonconforming uses. These remained unchanged until September 1940. The relevant changes are not limited to those that may have occurred between January and September, 1940, but includes those which occurred between 1929 and September, 1940. The record shows substantial community change and growth during this period. Cf. City of Irving v. Bull, 369 S.W.2d 60 (Tex.Civ.App.1963, writ ref'd n. r. e.). But more importantly, the validity of the exercise of the police power in effecting zoning changes is not measured by an arbitrary lapse of time but by the reasonableness of the enactment and the fairness of its relationship to the objects sought to be attained. Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W2d. 475 (1934). Art. 1011e authorizes periodic changes in zoning regulations, restrictions and boundaries. The statute does not by its terms require a change of conditions as pre-requisite to the exercise of this power. As stated with supporting citations in Baccus v. City of Dallas, Tex.Civ.App., 450 S.W.2d 389 (writ ref'd with written opinion Tex., 454 S.W.2d 391, 1970), a change in conditions is not necessary if the rezoning ordinance bears a reasonable relation to the general welfare and to an orderly plan of zoning development. The summary judgment record here does not conclusively show that the September 1940 comprehensive ordinance does not promote the good of the community. Respondent's reliance upon Hunt v. City of San Antonio, 462 S.W.2d 536 (Tex.1971) and Weaver v. Ham, 149 Tex. 309, 232 S.W.2d 704 (1950), is misplaced. As recognized in *Hunt,* the problem in these cases involved "spot" zoning, the opposite from the comprehensive zoning ordinances hereunder review.

 We also overrule the additional contention of respondent that the following provisions of the 1929 ordinance estops the City from enforcing the zoning changes effected by the later ordinances of 1940 and 1952:

" . . . If an amendment to this Ordinance is hereafter adopted, changing the boundaries of districts, the provisions of this Ordinance with regard to buildings or premises existing or buildings under construction or building permits issued at the time of the passage of this Ordinance shall apply to buildings or premises existing or buildings under construction or building permits issued in the area affected by such amendment at the time of the passage of such amendment. . .".

Apart from the question of whether the prior action of the governing body of a municipality may work an estoppel against subsequent zoning changes, see City of Hutchins v. Prasifka, 450 S.W.2d 829 (Tex.1970), there is no proof of reliance upon this provision to their injury by respondent or her predecessors in interest. As stated, the commercial use of the lots commenced in 1925 and the structures now sought to be preserved appear to have been in substantially their present form prior to enactment of the 1929 ordinance. In any event there is no proof that such was not the case; nor is there evidence of reliance upon the 1929 ordinance in any respect.

 The final problem is the proper disposition of the case. Under our holdings, the judgment of the intermediate

court, the effect of which was to grant respondent's motion for summary judgment, was in error and must be reversed. As to the City's motion, we wrote in Baccus v. City of Dallas, 454 S.W.2d 391 (Tex.1970), that the rule for determining whether the proponents of a zoning ordinance are entitled to a summary judgment sustaining its validity is different from that of a contestant of the ordinance; and that proponents are under the burden of establishing by summary judgment proof that conditions either conclusively support passage of the ordinance or make that action debatable or issuable. Our view is that the conditions shown by the summary judgment evidence establishes that, at the least, the legislative action of the governing body of the City in enacting the ordinances was issuable. Respondent does not contend for a remand for the development of further facts, no doubt in recognition that the summary judgment record presents the salient facts of the controversy.

Accordingly, the judgment of the court of civil appeals is reversed and that of the trial court is affirmed.

McGEE, J., notes his dissent.